[No. 7,703.—Department Two.]

CATHERINE McKEEVER *v.* THE MARKET STREET RAILROAD COMPANY.

NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — EVIDENCE — PRESUMPTION — QUESTIONS OF LAW AND FACT—TRIAL—JURY—PARTIES.—In an action by the widow and children of M. to recover damages for his death, alleged to have been caused by the neglect of the defendant, the evidence as to negligence and contributory negligence consisted of a series of circumstances about which there was no substantial conflict.

*Held:* The evidence was not of that character which presented a mere question of law, and it was for the jury to find not only the facts but the inferences from them.

ID.—MEASURE OF DAMAGE—INSTRUCTION.—The Court instructed the jury, that the measure of damage in such case is the pecuniary loss suffered by the parties entitled to the sum recovered, without any allowance for distress of mind; and that loss—the loss which the parties are in such a case entitled to recover—is what the deceased would have probably earned by his labor in his business or calling during the residue of his

life, and which would have gone for the benefit of his heirs or personal representatives, taking into consideration his age, ability and disposition to labor, and his habits of living and expenditure.

*Held:* The instruction was more favorable to defendant than the law justifies, inasmuch as the statute gives to the jury the power to assess such damages "as under all the circumstances of the case may be just."

Id.—Id.—Id.—Id.—Id.—Id.—Id.—Id.—Id.—Id.—The Court did not err in giving or refusing the instructions stated below.

APPEAL from a judgment for the plaintiffs, and from an order denying a new trial in the Superior Court of the City and County of San Francisco.   HUNT, J.

The Court instructed the jury in effect, that the rule in regard to contributory negligence was confined to cases where such negligence immediately or approximately or directly contributed to the result, and that if the deceased did not exercise ordinary care, and yet did not by the want of such ordinary care contribute to produce the injury, the plaintiff would be entitled to recover; that the deceased, and every other person in the exercise of ordinary care, was entitled equally with the defendant to drive upon or across the street in question, and that the defendant had not any rights superior to those of the deceased in that portion of the public street included between the track, except when its cars were actually thereon or moving over the same, subject to their right of way; that the mere fact itself, unaccompanied by other evidence that the deceased was upon the track of this company, was not of itself evidence of negligence on his part; and also to the effect stated in the syllabus.   The instructions asked by the defendant and refused were to the effect that the jury, under the pleadings (which contain no allegation of special damages), should not allow anything for prospective or any damages that had arisen since the commencement of the suit or that might arise or result in the future from the death of the deceased; also that the ordinary earnings of the deceased could not be taken into account under the pleadings, as there was no allegation that he supported the plaintiffs or earned anything for their support; also that under the pleadings the plaintiff could not recover anything beyond nominal damages.   The facts appearing in the evidence were substantially as follows: The deceased was driving his cart loaded

with coal up Market street, on the right-hand track of the defendant; his horse was gentle, but old, and a little touched in the wind, and (as one of the plaintiff's witnesses expressed it), "when he would get short-winded he would get stubborn, and when he did get stubborn you could not very easily handle him." That at the place where the accident occurred the horse had stopped, and deceased was standing at the near side of the horse, holding him by the head. Upon the approach of the dummy and cars of the defendant, deceased left the horse's head and jumped on the cart.

The subsequent occurrence is thus described by Mayor Kalloch: That the first thing which attracted his attention was a man on a cart making a vigorous exertion to get his horse out of the way of a dummy that was coming down the hill. At that time the dummy was about twenty feet from the cart. The man on the cart was whipping his horse. Instantly, there was a collision, and he (Kalloch) got there a moment or two afterwards. Found the horse wedged in between the car and the dummy. That at the time he first saw the cart, it was backing toward the track, and he saw there would be a collision unless the team could be stopped. That just before the collision the horse's head was turned to the right, at a sort of right angle to the street. That the dummy struck the rear part of the cart, and the wheels acting like a pivot threw it around, so that the horse and thills were projected between the dummy and the car.

The foregoing statement is taken from the evidence of the plaintiff.

On the part of the defense, the employee of the defendant who was in charge of the dummy, testified as follows: As he was coming down Market street he saw a coal cart standing on the up-track, heading up the track, and did not think anything of it at first, because there was room for the train to pass. That as he got near them he slowed up a little, because there was only about two feet or such a matter, clear, and passing a team down grade as close as that, he generally did slow up ·a little. That the man was standing by the head of the horse—both man and horse still. The man stood in that position until the dummy was very close to him; then left the horse's head

and jumped on the cart. That the horse did not seem to take any notice of the dummy until the forward end of it was almost even with his head. The horse's head was a little on one side. He was standing facing the other track a little, and when they got that near, the horse suddenly sheered off from the dummy. At the same time he sheered away, the cart ran back just in time for the dummy to catch the wheel. The dummy did not strike the cart very heavy. As soon as the deceased left the horse's head he (witness) put on the brake as hard as it could be put on, and reversed the engine. When the dummy struck the cart it "slewed" it around and gave it a jar. The horse staggered and swung around, so that his head came in the space between the engine and the car, and that brought the shafts of the cart right before the end of the car. When the dummy first struck the hub, the man fell off or dropped off. The dummy moved five or six feet after the collision. He could not have done anything more to stop in time. He had a steam brake; had the lever in his hand, and had the steam port partly open, so that his brake was on pretty heavy. He slowed down some when he saw the horse move; opened it wide open, and gave the steam brake a full head of steam, and had the other hand on the reverse lever, and pulled that back and reversed the engine up the hill. As the man stood by the horse's head the dummy would have cleared the nearest point of the car by two feet or such a matter.

The Assistant Superintendent of defendant, who was on the train at the time of the accident, testified as follows: Close to where the accident occurred he stepped on the rear step of the car, took hold of the brake to steady himself; looked out to see why they were slowing down. Saw the horse backing the cart. The dummy was nearly abreast of the horse's head, and the horse was in the act of backing into the dummy. He took in the situation at a glance and threw on the rear brake to help the engineer stop the train. The dummy struck the hub of the coal cart and swung it around nearly parallel with the train. The train moved on the down grade at the time it struck—passed it a little, and when it swung around parallel with the train the deceased was thrown clear over the horse and struck on the forward

dashrail of the car and fell between the dummy and the car. The horse swung around and was with his fore feet on the front platform of the car. After they saw the danger there could be nothing more done than was done to stop the train.

*H. S. Brown, J. E. Foulds*, and *Creed Haymond*, for Appellant.

There is no proof tending to show any unlawful act or neglect of duty on the part of appellant. On the contrary, the proof is all one way, and makes it clear that the dummy and car were fitted with the best appliances for controlling their speed; that they were lawfully moving upon the street at the time of the accident, at a low rate of speed; that there was no possibility of a collision until the horse commenced backing toward the track, upon which the dummy and car were moving, when it was too late for the dummy to be stopped. That the deceased stood with his horse and cart in a place of safety, and, at the last moment, abandoned his position, jumped upon the cart, allowed his horse to shy and back, and thereby caused the collision. (C. C. P., § 377; *Flemming* v. *W. P. R. R. Co.*, 49 Cal. 256.)

There was no conflict in the evidence, and construing it most favorably it was insufficient to justify the verdict.

To maintain this action two things must concur: 1. Death must have been caused by the wrongful act or neglect of the appellant. (C. C. P., § 377.) 2. The deceased must have been free from negligence directly contributing to the accident. (*Flemming* v. *W. P. R. R. Co.*, 49 Cal. 256.)

The defendant's railroad is operated by steam power, and it has the exclusive right to the use of its tracks except at crossings, and the mere fact that its tracks are laid in a city makes no difference as to its rights. (*Adolph* v. *C. P. N. & E. R. R. Co.*, 76 N. Y. 534; *Tennenbrock* v. *S. P. C. R. Co.*, 8 P. C. L. J. 994.)

McKeever having placed himself on the track with full knowledge of the fact that it was a steam railroad, he was guilty of contributory negligence.

*Edward P. Cole,* for Respondents.

We submit that there is a material conflict in the evidence, and that defendant's own witnesses show it was gross negligence on the part of the engineer not to stop his train, he having ample time so to do; and since there is such a conflict, this Court will not disturb the verdict of the jury. (*Spearman* v. *Cal. St. R. R. Co.,* 7 P. C. L. J. 544; *Downey* v. *Hellman,* 8 id. 13.)

The question of contributory negligence was correctly left to the jury, and the verdict is conclusive on this Court. (*Jamison* v. *S. J. & S. C. R. R. Co.,* 55 Cal. 593; *Meeks* v. *S. P. R. R. Co.,* 6 P. C. L. J. 1001; *Fernandes* v. *Sacramento C. R. R. Co.,* 52 Cal. 51; *Gay* v. *Winter,* 34 id. 164; *Shea* v. *P. & B. V. R. R. Co.,* 44 id. 428; *Robinson* v. *W. P. R. R. Co.,* 48 id. 422; *Stackus* v. *N. Y. C. & H. R. R. Co.,* 79 N. Y. 466–9; *Wasmer* v. *Del., Lack. & W. R. R. Co.,* 80 id. 212; *Railroad Company* v. *Stout,* 17 Wall. 660.)

The rule of conduct of a person while walking or driving upon a street railway is not identical with that when walking upon or crossing the ordinary steam railway track: he is neither a trespasser, nor a licensee thereon, but is there by positive right, and can presume that every man will exercise due caution in the use of the street. (1 Thomp. on Neg. 396; 12 Cent. L. J. 56; *Robinson* v. *W. P. R. R. Co.,* 48 Cal. 423; *Shea* v. *P. & B. V. R. R. Co.,* 44 id. 428; *Lynam* v. *Union R. R. Co.,* 114 Mass. 83.)

When a driver sees a vehicle standing so near the track that there is a probability that the attempt to pass will result in a collision, he is not entitled to make the experiment. (1 Thomp. on Neg., 398; *Albert* v. *Bleecker St. R. R. Co.,* 2 Daly, 389; *Terry* v. *Jewett,* 78 N. Y. 343.)

Street cars have not the exclusive right to the use of their tracks laid in the streets of a city, even if they are propelled by steam. And if operated upon the theory of exclusive right to their track, railroads become usurpers and wrong-doers. (*Adolph* v. *Cent. R. R. Co.,* 1 Jones & S. 187; S. C., 65 N. Y. 555; S. C., 76 id. 534; *Railroad Company* v. *Gladmon,* 15 Wall. 401; 1 Thomp. on Neg., 396; *Baxter* v. *Second Ave. R. R. Co.,* 3 Robt. 515; *Kansas Pac. R. R. Co.* v. *Pointer,* 9 Kan. 628.)

Thornton, J.:

This is an action to recover damages for the death of Daniel McKeever, caused by the neglect of the defendant. The action is brought by the heirs of the decedent under section 377 of the Code of Civil Procedure. There were verdict and judgment for plaintiff, and a motion by defendant for a new trial, which was denied. From the judgment and order denying a new trial, this appeal was prosecuted by defendant.

It is contended that the evidence is insufficient to justify the verdict. We have examined the evidence, and are of opinion that the point is not tenable. There is a substantial conflict in the testimony on material points, and, therefore, upon the well-settled rule of this and other Courts pronounced in *hundreds of cases*, we can not disturb the verdict. The testimony consists of a series of circumstances, from which the jury are to find on the issue of negligence. The jury under such circumstances are to make such inferences from the testimony as legitimately and justly follow, on which to base their verdict. They are not only to find the facts, but the inferences from them. The evidence is not of that character which presents a mere question of law. (*Fernandes* v. *Sacramento C. R. Co.*, 52 Cal. 45; *Shafter* v. *Evans*, 53 id. 33; *N. E. Glass Co.* v. *Lowell*, 7 Cush. 321; *Chidester* v. *Consol. People's Ditch Company, ante; Railroad Company* v. *Stout*, 17 Wall. 657, and cases there cited; C. C. P., §§ 1957, 1958, 1960.) The same remarks apply to the alleged contributory negligence of the deceased, Daniel McKeever. (See cases just cited, and particularly *Fernandes* v. *Sacramento C. R. Co.*, 52 Cal. 45.)

We find no error in the record. We perceive nothing in the charge of the Court, or in any of the instructions given, in conflict with the rules laid down in *Adolph* v. *Cent. P. N. & E. R. R. Co.*, 76 N. Y. 530. (See *Shea* v. *P. & B. V. R. R. Co.*, 44 Cal. 427; *R. R. Co.* v. *Gladmon*, 15 Wall. 401.)

The charge of the Court and the instructions given were more favorable to the defendant than the law justifies, inasmuch as the statute gives to the jury the power to assess such damages "as under all the circumstances of the case

may be just." (C. C. P., § 377; *Matthews* v. *Warner's Adm.*, 29 Gratt. (Va.) 570; *Balt. and O. R. Co.* v. *Noell's Adm.*, 32 id. 403–4; *Beeson* v. *Green Mountain G. M. Co.*, 57 Cal. 20.)
The requests of defendant were properly refused.
The judgment and order denying a new trial are affirmed.

SHARPSTEIN, J., and MORRISON, C. J., concurred.