JAMES FARRELL vs. THE WATERBURY HORSE RAILROAD COMPANY.

Hartford Dist., Jan. T., 1891. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

The conception of negligence involves the idea of a duty to act in a certain way towards others and a violation of that duty by acting otherwise. It involves the existence of a standard with which the given conduct is to be compared and by which it is to be judged.

Where this standard is fixed by law, the question whether the conduct in violation of it is negligence, is a question of law.

And where the standard is fixed by the general agreement of men's judgments, the court will recognize and apply the standard for itself.

But where it is not so prescribed or fixed, but rests on the particular facts of the case and is to be settled for the occasion by the exercise of human judgment upon those facts, as where the standard is the conduct in the same circumstances of a man of ordinary prudence, there the question is one of fact and not of law.

In such a case this court will not review the conclusion of the court below, unless it can see from the record that in drawing its inference the trier imposed some duty upon the parties which the law did not impose, or absolved them from some duty which the law required of them in the circumstances, or in some other respect violated some rule or principle of law.

[Argued January 6th,—decided March 20th, 1891.]

ACTION for an injury from the negligence of the defendants; brought to the District Court of Waterbury, and

| | |
|---|---|
| 60 | 239 |
| 60 | 296 |
| 60 | 493 |
| 60 | 239 |
| 62 | 9 |
| 62 | 507 |
| 60 | 239 |
| 63 | 154 |
| 60 | 239 |
| 64 | 480 |
| 60 | 239 |
| 65 | 214 |
| 65 | 219 |
| 60 | 239 |
| 66 | 33 |
| 66 | 45 |
| 66 | 536 |
| 60 | 239 |
| 67 | 49 |
| 67 | 269 |
| 60 | 239 |
| 68 | 493 |
| 60 | 239 |
| 69 | 457 |
| 70 | 193 |
| 60 | 239 |
| 72 | 39 |
| 72 | 73 |
| 72 | 81 |
| f72 | 407 |
| 60 | 239 |
| 74 | 356 |
| 74 | 562 |
| 74 | 563 |
| 60 | 239 |
| 76 | 488 |

heard in damages, on a default, before *Cowell*, *J.* The
court made the following finding of facts.

On November 10th, 1887, and for some time prior thereto,
the plaintiff was duly licensed to make connections with the
sewers in the city of Waterbury. On that day the defend-
ant operated a horse-railroad on West Main street in that
city, and its cars passed a given point every twelve minutes.
In front of the premises of one Kilmartin, which was on the
south side of the street, there was a double line of tracks to
allow the cars to pass each other. The point of separation
between these two lines commenced about one hundred and
fifty feet west of Kilmartin's premises, and there was a slight
rise of grade towards the east, the street running east and
west. The sewer at this point is about fifteen feet below
the surface, and is located between the two lines of track.
On November 9th, the plaintiff commenced excavating for
the purpose of connecting Kilmartin's premises with the
sewer, and on November 10th, by ten o'clock in the fore-
noon, had reached to the depth of about twelve feet below
the southerly line of the defendant's track.

The manner in which the cars passed the trench was by
running them up to a point ten or twelve feet distant there-
from, then detaching the horses before the car came to a
stop, the horses passing around the north end of the trench.
The car without coming to a stop was pushed over the trench
by one of the defendant's workmen stationed there for that
purpose. The plaintiff also assisted a number of times that
morning in pushing the car over the trench, so that he well
understood the situation.

On the 10th, a workman, whose duties were generally
in the horse-car stables, was driving the horses attached to
the car which caused the accident. He was a relief driver,
or one whose duty it was to relieve the regular drivers
whenever it became necessary. He had had considerable
experience as a driver on horse cars, and was considered a
competent driver.

About ten o'clock in the forenoon, one of the plaintiff's
workmen was at work in the trench under the north rail of

the south line of the defendant's tracks, and the plaintiff was standing in the west side of the trench, facing east, one foot on each side of the south rail of the south line of the track, bending over, giving directions to the workmen in the trench, and for this reason his mind was not alive to the fact that a car was approaching him from the west. The driver of the defendant's car as he came to the point where the turn-out separates, west of Kilmartin's, saw the plaintiff, and immediately called out to him to get out of the way, in a voice loud enough to have been heard by the plaintiff if his attention was not then occupied with the workmen in the trench, and was heard by the defendant's workman who was stationed at the trench for the purpose of pushing the car across it, and who was standing but a few feet from the plaintiff, which workman also called out to the plaintiff to assist in pushing the car. The plaintiff, however, did not hear the call.

Just at this moment the driver began preparations to detach the horses from the car, and for that purpose leaned over the forward rail to remove the pin which holds the coupling pin in place, but for some reason it could not be removed immediately, and the horses' heads reached within a few feet of the trench before the driver succeeded in withdrawing the pin. The car at this time was moving at the rate of three or four miles an hour from the momentum it had received, and from being pushed along by the workman whose duty it was so to do.

The driver, immediately after removing the pin and reining his horses away from the track, saw the plaintiff in close proximity to the forward end of the car. He immediately applied the brake, but the car struck the plaintiff, knocking him down, dragging him some distance, breaking his collarbone, and otherwise severely injuring him.

No other notice of the approach of the car was given than is above set forth.

I find that the defendant was not negligent in running the car in the manner above described, unless the foregoing facts constitute negligence.

The plaintiff claimed that it was not in law negligence to have his attention concentrated on the workmen in the trench for a few moments to such an extent as to divert his mind from the approach of a horse car; also that he had the right to rely to some extent on the fact that the driver would see him, and would exercise care to avoid injuring him; also that, being lawfully on the track, the defendant owed him the duty of active vigilance to avoid injuring him; also that the driver was bound to use every reasonable effort to avoid injuring him after discovering that he was on the track exposed to injury.

On the foregoing facts, however, I find that the plaintiff was guilty of contributory negligence, and therefore assess to him $75 only as nominal damages. If the plaintiff was not on the above recited facts guilty of contributory negligence, his injuries were of such a character that he should recover six fold the assessed damages.

The plaintiff appealed.


*J. O'Neill*, for the appellant.

1. The driver of the horse car was guilty of negligence. The plaintiff was lawfully on the horse car track; he was licensed to make sewer connections and was performing his work in the place where he was injured; he was momentarily engaged in giving directions to his men in the trench. The car driver saw him at the distance of one hundred and fifty feet, and called out to him to get out of the way; but the plaintiff did not hear the call. The driver gave no further attention to the plaintiff until the instant before the accident happened; he was driving at the rate of three or four miles an hour, or about one hundred and fifty feet in thirty seconds; he was bending over the dash-board removing a coupling pin for the purpose of detaching the horses from the car. Under these circumstances the defendant was plainly under an obligation to make use of *active vigilance* as distinguished from ordinary care to prevent an accident to the plaintiff. There was no *active vigilance;* even ordinary care was not exercised. The driver knew that the plaintiff was on

the track; he called out to him to get out of the way; the plaintiff's back was towards him; he gave no evidence that he heard the call; his mind was momentarily engaged giving directions to the men in the trench; the driver continued to drive at the rate of three or four miles an hour; neither the horses nor the brake were under his immediate control. This, as it seems to us, was gross carelessness. *Com.* v. *Metropolitan R. R. Co.*, 107 Mass., 236; *Oldfield* v. *N. York & Harlem R. R. Co.*, 14 N. York, 310; *Mangam* v. *Brooklyn R. R. Co.*, 38 id., 455; *Mentz* v. *Second Av. R. R. Co.*, 3 Abb. Court of App., 274; *Pendrill* v. *Second Av. R. R. Co.*, 2 Jones & Sp., 481; *Baltimore City Passenger R. R. Co.* v. *MacDonnell*, 43 Md., 534; *Dahl* v. *Milwaukee City R. R. Co.*, 27 N. W. Rep., 185; *Kelly* v. *Hendrie*, 26 Mich., 255, 261.

2. The plaintiff was not guilty of contributory negligence. He had the same right to use the highway that the defendant had; he was not a trespasser, but was there by positive right. *Lyman* v. *Union Railroad Co.*, 114 Mass., 83, 88; *Howland* v. *Union Street R. R. Co.*, 150 id., 86; *Babcock* v. *Old Colony R. R. Co.*, id., 467; *Hegan* v. *Eighth Av. R. R. Co.*, 15 N. York, 380; *Adolph* v. *Central Park &c. R. R. Co.*, 65 id., 554; *Wilbrand* v. *Eighth Av. R. R. Co.*, 3 Bosw., 314; *Shea* v. *Potero &.Bay View R. R. Co.*, 44 Cal., 414; *Erickson* v. *St. Paul &c. R. R. Co.*, 43 N. W. Rep., 332.

3. Even if the plaintiff were negligent this would not excuse the defendant, if after discovering the negligence of the plaintiff the accident could have been avoided by the exercise of ordinary care on the part of the driver. *Brown* v. *Lyman*, 31 Penn. St., 510; *Thirteenth St. Passenger R. R. Co.* v. *Boudrou*, 92 id., 475; *Barker* v. *Savage*, 45 N. York, 191; *Northern &c. R. R. Co.* v. *The State*, 29 Md., 420; *Locke* v. *St. Paul & Pacific R. R. Co.*, 15 Minn., 350; *Nelson* v. *Atlantic & Pacific R. R. Co.*, 68 Mo., 593; *O'Keefe* v. *Chicago &c. R. R. Co.*, 32 Iowa, 467; *Satterly* v. *Hallock*, 5 Hun, 178; *Byram* v. *Meguire*, 3 Head, 530; *Flynn* v. *San Francisco &c. R. R. Co.*, 40 Cal., 14; *Trow* v. *Vermont Central R. R. Co.*, 24 Verm., 487; *Isbell* v. *N. York & N. Hav. R. R. Co.*, 27 Conn., 393; *Smithwick* v. *Hall & Upson Co.*, 59 id.,

261; *Davies* v. *Mann,* 10 Mees. & Wels., 546; *Radley* v. *London & N. W. R. R. Co.,* L. R., 1 App. Cas., 754.

4. The conclusions of the court below upon the facts, that the defendants were not guilty of negligence and that the plaintiff was so, can be reviewed. They are expressly made as conclusions from the facts found and not as a finding of facts.

*G. E. Terry,* for the appellee.

TORRANCE, J. This is an action brought to recover damages for an injury caused to the plaintiff by the negligence of the defendant, in the management of one of its horse cars, on a public highway.

The case was defaulted and heard in damages. The court below made a finding of the subordinate and evidential facts, bearing upon the question of the negligence of the defendant, and the contributory negligence of the plaintiff, and then added the following :—" I find that the defendant was not negligent in running the car in the manner above described, unless the foregoing facts constitute negligence. On the foregoing facts, however, I find that the plaintiff was guilty of contributory negligence, and therefore assess to him seventy-five dollars only, as nominal damages. If the plaintiff was not on the above recited facts guilty of contributory negligence, his injuries were of such a character that he should recover six fold the assessed damages."

Upon the trial below the plaintiff made certain claims upon matters of law, which are set forth in the record.

Four of the six reasons of appeal filed in the case are based upon the assumed fact that the court below decided these claims adversely to the plaintiff. But the record neither expressly nor by necessary implication discloses any such fact. For aught that appears, the court below took the view of the law, as expressed in these claims, which the plaintiff asked it to take. This court upon an appeal cannot consider any error assigned in the reasons of appeal, unless "it also appears upon the record that the question

was distinctly raised at the trial and was decided by the court adversely to the appellant's claim." Gen. Statutes, § 1135. We cannot therefore consider the matters set forth in the last four reasons of appeal.

This leaves to be considered only the first two reasons of appeal, which are stated as follows :—" 1st. The court erred in deciding that the defendant, on the facts found, was not negligent. 2d. In deciding that the plaintiff was guilty of contributory negligence."

The plaintiff claims that the conclusions of the trial court upon the facts found, as to the negligence of the defendant, and the contributory negligence of the plaintiff, are inferences or conclusions of law, which may be reviewed by this court upon an appeal, and the defendant claims that they are inferences or conclusions of fact, which cannot be so reviewed.

If the plaintiff is right in his claim, this court can and ought to review the conclusions aforesaid. If the defendant is right, there is properly no question presented upon the record for the consideration of this court. Whether, in a given case involving the question of negligence of either the plaintiff or the defendant, the conclusion or inference of negligence drawn by the trier or triers is one which this court has or has not the power to review, is always an important and often a difficult question to determine. Its importance arises from the fact that in the former case such conclusion may upon review be either sustained or set aside by this court, while in the latter case such conclusion, whether drawn correctly or not, is, generally speaking, final and conclusive.

The difficulty of determining whether the conclusion belongs to one or the other of these classes, arises, in part at least, from the complex nature of negligence as a legal conception, and the fact that the word "negligence" is frequently used for only a part of this complex conception. "Negligence, like ownership, is a complex conception. Just as the latter imports the existence of certain facts, and also the consequence (protection against all the world), which

the law attaches to those facts, the former imports the existence of certain facts (conduct,) and also the consequence (liability), which the law attaches to those facts." Holmes's Common Law, p. 115. This conception involves, as its main elements, the subordinate conceptions of a duty resting upon one person respecting his conduct toward others; a violation of such duty, through heedlessness or inattention on the part of him on whom it rests; a resulting legal injury or harm to others as an effect, and the legal liability consequent thereon. Accordingly, as a legal conception, negligence has been defined as follows:—"A breach of duty, unintentional, and proximately producing injury to another possessing equal rights." Smith's Law of Negligence, 1.

But neither in text books, nor in judicial decisions, is the word "negligence" used at all times as standing for all the elements of this entire complex conception. When in courts of law, the principal question is, what was the conduct, it is customary and perhaps allowable to say that the question of negligence is one of fact to be determined by the trier; and when the question principally respects the duty or the liability, to say that it is a question of law. When therefore, in text books, or in adjudged cases, the assertion is made that the "question of negligence" is a "question of fact" or is a "question of law," or is a "mixed question of law and of fact," no confusion of thought will result if the sense in which the word negligence is used in the particular instance be ascertained, and this in most cases may be readily determined from the context.

But another, and perhaps the chief cause of the difficulty of determining in a given case whether the conclusion as to negligence is one of law or of fact, arises from another source, which we will now consider.

The conception of negligence, as we have seen, involves the idea of a duty to act in a certain way towards others, and a violation of that duty by acts or conduct of a contrary nature. The duty is imposed by law, either directly by establishing specific or general rules of conduct binding upon all persons, or indirectly through legal agreements made by

the parties concerned. It is with duties not arising out of contract that we are here concerned.

There is further involved in the legal conception of negligence, the existence of a test or standard of conduct with which the given conduct is to be compared and by which it is to be judged. The question whether the given conduct comes up to the standard is frequently called the " question of negligence." The result of comparing the conduct with the standard is generally spoken of as " negligence " or the " finding of negligence." Negligence, in this last sense, is always a conclusion or inference, and never a fact in the ordinary sense of that word. When the question of negligence, in the above sense, can be answered by the court, it is called a " question of law," and the answer is called an inference or conclusion of law; when it is and must be answered by a jury or other trier, it is generally called a question of fact, and the answer is called an inference or conclusion of fact. Where the law itself prescribes and defines beforehand the precise specific conduct required under given circumstances, the standard by which such conduct is to be judged is found in the law. When, in such a case, the conduct has been ascertained, the law, through the court, determines whether the conduct comes up to the standard. The rules of the road, some of the rules of navigation, and. the law requiring the sounding of the whistle or the ringing of the bell of a locomotive approaching a grade crossing at a specified distance therefrom, may serve as instances of this kind.

Of course if, in cases of this kind, one of the parties injures another, he is not necessarily absolved from blame by showing a compliance with the specific rule or law, for it may be that while so doing he neglected other duties which the law imposed upon him. But, when the only question is whether the ascertained conduct comes up to the standard fixed by the specific rule or law, the conclusion, inference or judgment that it does or does not, is, as we have said, one of law.

" A question of law, in the true sense, is one that can be decided by the application to the specific facts found to exist

(here the conduct of some person and the circumstances under which he acted or omitted to act,) of a pre-existing rule. Such a rule must contain a description of the kind of circumstances to which it is to apply, and the kind of conduct required." Terry's Leading Principles of Anglo-Am. Law, § 72.. In such cases, as this court said in substance in *Hayden* v. *Allyn*, 55 Conn., 289, the evidence exhausts itself in producing the facts found. Nothing remains but for the court, in the exercise of its legal discretion, to draw the inference of liability or non liability, and this inference or conclusion can in such cases always be reviewed by this court. Clear cases of this kind usually present no difficulty.

As applicable to most cases, however, the law has not provided specific and precise rules of conduct ; it contents itself with laying down some few wide general rules. The rule that all persons must act and conduct themselves, under all circumstances, as a man of ordinary prudence would act under like circumstances, is an illustration of this class of rules or laws. This general rule of conduct is not a standard of conduct in the same sense in which a fixed rule of law is such a standard. In most cases where it must be applied, the principal controversy is over the question what would have been the conduct of a man of ordinary prudence under the circumstances. Manifestly the rule itself can furnish no answer to that question in such cases. "The rule usually propounded, to act as a reasonable and prudent man would act in the circumstances, still leaves open the question how such a man would act." Terry's Lead. Prin. Anglo-Am. Law, § 72.

It is also a varying standard. "In dangerous situations ordinary care means great care ; the greater the danger the greater the care required; and the want of the degree of care required may amount to culpable negligence." *Knowles* v. *Crampton*, 55 Conn., 344.

This general rule has rightly been called "a featureless generality," but from the necessity of the case it is the only rule of law applicable in the great majority of cases involving the question of negligence. The law cannot say before-

hand how the man of ordinary prudence would act, or ought to act, under all or any probable set of circumstances. But in cases involving the question of negligence, where this general rule of conduct is the only rule of law applicable, it may and sometimes does happen, that the conduct under investigation is so manifestly contrary to that of a reasonably prudent man, or is so plainly and palpably like that of such a man, that the general rule itself may be applied as a matter of law, by the court, without the aid of a jury. That is, the conduct may be such that no court could hesitate or be in doubt concerning the question whether the conduct was or was not the conduct of a person of ordinary prudence under the circumstances.

The difference between the classes of cases where the court can thus apply the general rule of conduct, and those wherein it must be applied by the jury, is well illustrated in the following extract from the opinion of the Supreme Court of the United States, in the case of *Railroad Company* v. *Stout,* 17 Wall., 657. "If a sane man voluntarily throws himself in contact with a passing engine, there being nothing to counteract the effect of this action, it may be ruled, as a matter of law, that the injury to him resulted from his own fault, and that no action can be sustained by him or his representatives. So if a coach-driver intentionally drives within a few inches of a precipice, and an accident happens, negligence may be ruled as a question of law. On the other hand, if he had placed a suitable distance between his coach and the precipice, but by the breaking of a rein or an axle, which could not have been anticipated, an injury occurred, it might be ruled as a question of law that there was no negligence and no liability. But these are extreme cases. The range between them is almost infinite in variety and extent. It is in relation to these intermediate cases that the opposite rule prevails. Upon the facts proven in such cases it is a matter of sound judgment and discretion, of sound inference, what is the deduction to be drawn from the undisputed facts. Certain facts we may suppose to be clearly established, from which one sensible, impartial man would infer that proper

care had not been used and that negligence existed, while another equally sensible and equally impartial man would infer that proper care had been used and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury."

The line of division between these two classes of cases is by no means a fixed and well-defined one. Close cases will occur where courts may well differ in opinion as to whether they lie on one side or on the other of the boundary line. " Legal, like natural divisions, however clear in their general outline, will be found on exact scrutiny to end in a penumbra or debatable land." Holmes's Common Law, 127.

Now the difficulty of determining whether a conclusion or inference of negligence is one of fact or one of law, as these phrases are commonly used, arises mainly in this intermediate class of cases. In such cases the law itself furnishes no certain, specific, sufficient standard of conduct, and, of necessity, leaves the trier to determine, both what the conduct is, and whether it comes up to the standard, as such standard exists in the mind of the trier. In a case of this kind the inference or conclusion of the trier, upon the question whether the ascertained conduct does or does not come up to such standard, is, as we have said, called a question of fact, and, generally speaking, it cannot be reviewed by this court. If such inference is drawn by a jury, it is final and conclusive, because their opinion of what a man of ordinary prudence would or would not do, under the circumstances, is the rule of decision in that special case. If drawn by a single trier, as it may be under our system of law, it is equally final and conclusive for the same reason.

In every such case the trier, for the time being, adopts his own opinion, limited only by the general rule, of what the man of ordinary prudence would or would not do under the circumstances, and makes such opinion the measure or standard of the conduct in question. This view of the subject is forcibly put by COOLEY, J., in the case of *Detroit & Milwaukee R. R. Co.* v. *Van Steinburg*, 17 Mich., 99, wherein he says:—" When the judge decides that a want of due care

is not shown, he necessarily fixes in his own mind the stan-
dard of ordinary prudence, and measures the plaintiff's con-
duct by that. He thus makes his own opinion of what the
prudent man would do a definite rule of law." And in
speaking of this same matter, the Supreme Court of Penn-
sylvania uses the following language :— " When the standard
shifts with the circumstances of the case, it is in its very na-
ture incapable of being determined as a matter of law, and
must be submitted to the jury. There are, it is true, some
cases in which a court can determine that omissions consti-
tute negligence. They are those in which the precise meas-
ure of duty is determinate, the same under all circumstances.
When the duty is defined, a failure to perform it is of course
negligence, and may be so declared by the court. But
where the measure of duty is not unvarying, where a higher
degree of care is demanded under some circumstances than
under others, where both the duty and the extent of perform-
ance are to be ascertained as facts, a jury alone can deter-
mine what is negligence and whether it has been proved.
Such was this case. The question was not alone what the
defendants had done or left undone, but, in addition, what
a prudent and reasonable man would ordinarily have done
under the circumstances. Neither of these questions could
the court solve." And later on in the same opinion, in
commenting upon a case cited by the plaintiff, the court
says :— " Even if the court might, in that case, have declared
the effect of the evidence, it must have been because the
duty of the defendants was unvarying and well defined by
the law. Here the standard of duty was to be found as a
fact, as well as the measure of its performance." *McCully*
v. *Clarke*, 40 Penn. St., 399.

In his book on the Common Law, page 123, Judge Holmes
speaks as follows :— " When a case arises in which the stan-
dard of conduct, pure and simple, is submitted to the jury,
the explanation is plain. It is that the court, not entertain-
ing any clear views of public policy applicable to the matter,
derives the rule to be applied from daily experience, as it
has been agreed that the great body of the law of tort has

been derived. But the court further feels that it is not it-self possessed of sufficient practical experience to lay down the rule intelligently. It conceives that twelve men taken from the practical part of the community can aid its judg-ment."

In treating of contributory negligence, Mr. Beach, in his work on that subject, says:—" In the ultimate determina-tion of the question whether the plaintiff was guilty of con-tributory negligence, two separate inquiries are involved. First. What was ordinary care under the circumstances? Second. Did the conduct of the plaintiff come up to that standard? With respect to the standard of ordinary care, it is not always a fixed standard. In many cases it must be found by the jury. In such a case each of these inquiries is for the jury. They must assume a standard and then meas-ure the plaintiff's conduct by that standard. Whenever the standard is fixed, and when the measure of duty is precisely defined by law, then a failure to attain that standard is neg-ligence in law, and a matter with which the jury can properly have nothing to do." Beach on Contrib. Negligence, p. 459, § 163. The distinction between these two classes of cases is a fundamental one and not one of mere form.

It is sometimes said that, where all the facts are found, the mode of stating the inference or conclusion of negligence will make it one of law or fact as the case may be. But this clearly is not so. No mere mode of statement, whether found in a special verdict or in a special plea, or in a finding of facts, can convert the one into the other. In *Beers* v. *The Housatonic R. R. Co.*, 19 Conn., 566, this court said:— " If it were competent for the defendants to have availed themselves of a want of ordinary and reasonable care on the part of the plaintiff by a special plea, and that plea should allege merely the facts or circumstances on which the de-fendant claims that the court should have declared to the jury that such want of care was proved; or if they had been found in a special verdict by the jury; it is quite clear that such plea or verdict would be unavailable to the de-fendants on the question, for the reason that the one would

allege and the other would find only evidence of the fact in issue, and not the fact itself." In *Williams* v. *Town of Clinton*, 28 Conn., 264, this court said:—" Under the pleadings the issue presented nothing but a question of fact—was there or not culpable negligence on her part? We cannot permit such a question to be taken from the jury, the legal and constitutional tribunal, by the defendant's specially reciting the evidence adduced on the trial and claiming that the court shall instruct them as to its legal effect. Such a course would speedily put an end to all jury trials." In *Fiske* v. *Forsyth Dyeing Co.*, 57 Conn., 119, this court said:—" The only error assigned in this case is that the court below held that ' upon the facts found, the defendants were guilty of negligence in leaving their horses unhitched and unattended, in the manner described.' The finding of the court states all the facts with great particularity. * * * But the question of negligence cannot thus be made a question of law."

In the following cases the findings of facts were substantially similar in form to the finding of facts in the case at bar, yet this court held, and rightly, that it had no power to review the conclusion as to negligence. *Daniels* v. *Town of Saybrook*, 34 Conn., 377 ; *Congdon* v. *City of Norwich*, 37 id., 414 ; *Young* v. *City of New Haven*, 39 id., 435 ; *Brennan* v. *Fair Haven & Westville R. R. Co.*, 45 id., 284 ; *Davis* v. *Town of Guilford*, 55 id., 356.

On the other hand, where special findings of fact were made, and from those facts the trial court formally drew the conclusion as to negligence, this court, notwithstanding the form of the finding, held the conclusions to be conclusions of law and reviewed them. *Beardsley* v. *City of Hartford*, 50 Conn., 529 ; *Nolan* v. *N. York, N. Hav. & Hartford R. R. Co.*, 53 id., 461 ; *Bailey* v. *Hartford & Conn. Valley R. R. Co.*, 56 id., 444 ; *Dyson* v. *N. York & N. Eng. R. R. Co.*, 57 id., 9 ; *Gallagher* v. *N. Y. & N. Eng. R. R. Co.*, id., 442.

It is frequently supposed or assumed that it makes some difference in this matter whether the case is tried to the jury or to the court, but this is not so. Whether the trier is one man or twelve men makes no difference. If the case is such

that the trier and not the law must determine whether the conduct in question is, or is not, that of the prudent man, the conclusion of the single trier upon this point is just as binding and final as that of twelve men.

In *Shelton* v. *Hoadley*, 15 Conn., 535, this court held that where an issue of fact is closed to the court instead of to the jury, the conclusion of the court cannot be reviewed upon a bill of exceptions, which sets out all the facts, any more than the verdict of a jury could be in like circumstances. And in *Brady* v. *Barnes*, 42 Conn., 512, it is said:—" When an issue of fact is closed and tried by the Superior Court, this court will not, upon evidence reported, assume the responsibility of finding by inference therefrom a fact which that court could not find. The principles and the reasons which protect the sovereignty of juries over facts, when issues are closed to them, underlie this right of auditors and committees in chancery; for they are but statutory juries finding facts by forms of procedure peculiar to themselves." So also in *Stannard* v. *Sperry*, 56 Conn., 546, it is said:—" Under our system, whenever the court, or a committee of its appointment, finds a fact, such finding is beyond revision or correction equally with the verdict of a jury, if there be no illegality in the mode of proceeding and no intentional wrong done. Errors of judgment as to the value of property must stand uncorrected. This is equally true of the finding of a committee appointed to hear and find in place of and for the court. If its finding of facts is to be reviewed in every case by the court, its hearing becomes an useless expenditure of labor and money."

It may be said that this view of the subject leaves the parties at the mercy of the trier. A like objection, taken in the case last above cited, was thus answered in the opinion:—" The defendant suggests that if this be so he is at the mercy of the committee as to the value of his part. But this fact does not vitiate the proceeding. That every person shall be at the mercy of some tribunal, both as to law and fact, is the only reason for the existence of a judicial system."

The distinction in question then, being in general a fundamental and important distinction, the question remains whether any general rule exists, the application of which will determine in every case with certainty whether the inference as to negligence to be drawn from ascertained facts is one of fact or of law in the sense explained. Perhaps no such general rule has been or can be formulated. At any rate we know of none, and we do not intend in the present case to lay down any such general rule. But cases involving the distinction in question have been frequently before the courts; they have been decided upon principles which have been, to some extent, formulated into working rules; and these rules can be applied with reasonable certainty in most cases that arise in actual practice. In his work on torts, Judge Cooley states such a rule as follows:—" The proper conclusion seems to be this : If the case is such that reasonable men, unaffected by bias or prejudice, would be agreed concerning the presence or absence of due care, the judge would be quite justified in saying that the law deduced the conclusion accordingly. If the facts are not ambiguous, and there is no room for two honest and apparently reasonable conclusions, then the judge should not be compelled to submit the question to the jury as one in dispute." Cooley on Torts, p. 670. In the case of *Detroit & Milwaukee R. R. Co.* v. *Van Steinburg*, 17 Mich., *supra*, Judge Cooley stated the rule as follows:—" It is a mistake to say, as it is sometimes said, that when the facts are undisputed, the question of negligence is necessarily one of law. This is generally true only of that class of cases where a party has failed in the performance of a clear legal duty. When the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence cannot be determined until one or the other of these conclusions has been drawn by the jury. The inferences must either be certain or uncontrovertible, or they cannot be decided by the court." Wharton says:—"The true position is this: Negligence is always a logical inference to be drawn by the jury from all the circumstances of the

case, under the instructions of the court. In all cases in which the evidence is such as not to justify the inference of negligence, so that the verdict of a jury would be set aside by the court, then it is the duty of the court to negative the inference. In all other cases the question is for the jury, subject to such advice as may be given by the court as to the force of the inference." Wharton on Negligence, § 420.

The rule as laid down by Judge Cooley is substantially like the one adopted by the Supreme Court of the United States in the case of *Railroad Co.* v. *Stout*, 17 Wall., *supra.* The rule is thus stated in Terry's Leading Principles of Anglo-American Law, § 72:—" The question—was the specific conduct of the specific person in the specific circumstances reasonable or not, must usually remain as a question which is really one of fact. When the reasonableness or unreasonable of the conduct is very plain, the court will decide it. When it seems to the court fairly to admit of doubt, it will be handed over to the jury."

Mr. Beach, in his work on Contributory Negligence, p. 454, states the rule as follows:—" When the facts are unchallenged, and are such that reasonable minds could draw no other inference or conclusion from them than that the plaintiff was or was not at fault, then it is the province of the court to determine the question of contributory negligence as one of law." In *Ochsenbein* v. *Sharpley*, 85 N. York, 214, the court stated the rule thus:—" When the facts are undisputed and do not admit of different or contrary inferences, the question is one of law for the court." This also substantially appears to be the rule in Ohio and California. *Cleveland, C. & C. R. R. Co.* v. *Crawford*, 24 Ohio St., 631 ; *McKeever* v. *Market St. R. R. Co.*, 59 Cal., 294.

It is perhaps unnecessary to say that, in making the foregoing citations from text writers and decisions, we do not necessarily adopt or approve of all their conclusions, or the rule precisely as stated by them ; but we think some of the principles stated, upon which the rules are or profess to be based, will furnish a practical guide for the solution of the question we are considering, in cases like the one at bar.

Manifestly this frequently recurring question ought to be decided upon principle, so far as it is possible to do.

We think an examination of the cases from our own reports heretofore cited, and of others therefrom that might be cited, involving the question of negligence, will show that this court in such decisions has applied principles which, in most cases occurring in practice, will solve the question under consideration without much difficulty. From such an examination we think it will appear that, in cases involving the question of negligence, where the general rule of conduct is alone applicable, where the facts found are of such a nature that the trier must, as it were, put himself in the place of the parties, and must exercise a sound discretion based upon his experience, not only upon the question what did the parties do or omit under the circumstances, but upon the further question, what would a prudent, reasonable man have done under those circumstances, and especially where the facts and circumstances are of such a nature that honest, fair-minded, capable men might come to different conclusions upon the latter question, the inference or conclusion of negligence is one to be drawn by the trier and not by the court as matter of law. Such an inference or conclusion will, speaking generally, be treated by this court as one of fact, which will not be reviewed where the facts have been properly found, unless the court can see from the record that in drawing such inference the trier imposed some duty upon the parties which the law did not impose, or absolved them from some duty which the law required of them under the circumstances, or in some other respect violated some rule or principle of law.

Of course we do not here mean to say that this court cannot review such a conclusion upon an appeal from a verdict against evidence, or that it may or may not do so upon a reservation or other proceeding of a like nature. We only mean to say that, in cases where it is the province of the trier to draw the inference of negligence, and no error of law in the sense explained is apparent on the record, error cannot be predicated of the mere act of the trier in drawing

what is supposed to be an incorrect or wrong inference from facts properly found. We think these principles can be applied to the case at bar, and that they are decisive of it.

The principal facts are correctly found. They are somewhat numerous, and the question of the negligence of either party is complicated with questions as to the conduct of others, and with the special facts and circumstances of the case of which the conduct forms a part. Under the facts found the only rule applicable was the general rule of conduct. The facts and circumstances are, we think, clearly of such a nature that a trier must of necessity measure the prudence of the parties' conduct by a standard of behavior which he himself adopts for that case, based upon his opinion of the manner in which a man of ordinary prudence would act under the same circumstances. The problem involved in such an inquiry can only be solved by the trier placing himself in the position of the parties, and, in the light of his experience of human affairs, examining all the facts and circumstances as they appeared to them at the time. Furthermore, we think the facts found are of such a nature that men equally honest and impartial might, and probably would, draw from them different and opposite inferences as to whether due care was or was not exercised by each party under the circumstances.

It is not apparent upon the record that the court, in arriving at the conclusions as to negligence in the case at bar, imposed upon either party the performance of any duty which the law did not impose, nor that it did not require of them the performance of any duty which the law required; nor that in any other respect it violated any rule or principle of law.

For these reasons we think the case at bar comes within the class of cases where the conclusion of the trier, both as to negligence and contributory negligence, are regarded as conclusions of fact which this court cannot review.

There is no error apparent upon the record.

In this opinion ANDREWS, C. J., LOOMIS and SEYMOUR, Js., concurred.

CARPENTER, J.  I concur in the result on the ground that the plaintiff was guilty of contributory negligence.  But I think the facts show, as matter of law, that the defendant was guilty of negligence.  The driver of the horse car saw the plaintiff on the track and called to him to get out of the way; but the plaintiff did not heed the call.  The horses were driven along, detached from the car, and the car, without coming to a stop, was pushed against the plaintiff by the defendant's workmen.  One of the workmen called upon the plaintiff to assist in pushing the car, but he did not hear the call.  Upon these facts I think the law will not excuse the defendant for running over the plaintiff.