[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON CT Page 2861 MOTION FOR SUMMARY JUDGMENT
This is a motion for summary judgment filed by the plaintiff. The plaintiff has moved for summary judgment as to liability only on the grounds that there are no genuine issues of material fact. Plaintiff argues it is entitled to judgment as a matter of law. Connell v. Colwell,214 Conn. 242, 246 (1990) because of the absence of any genuine issue of material fact. In such a case the utility of this procedure prevents the delay and expense of trial. Dowling v. Kielak, 160 Conn. 14, 16 (1970). It is also true that in deciding such a motion the court has to view the evidence in the light most favorable to the non-movant and the burden of proving the absence of any genuine dispute is on the moving party. Noland v. Borkowski,206 Conn. 495, 500 (1988).
The defendant concurs with the plaintiff's statement of material facts and the court will adopt the plaintiff's statement.
On June 12, 1990, plaintiff bought a six-count complaint against the defendant alleging negligence, breach of contract, breach of implied warranty, negligent misrepresentation, fraudulent misrepresentation and violations of the Connecticut Unfair Practices Act. The allegations pertain to electrical work the defendant performed at retail premises leased by plaintiff at the Copaco Shopping Center in Bloomfield, Connecticut ("the premises"). Pursuant to the terms of the lease, the plaintiff was required to separate the electrical services at the premises so it would no longer share electricity with another business operating in the shopping center. The defendant was to perform the separation and rebuild the electrical switchboard pursuant to a written proposal accepted by plaintiff. On January 26, 1989, one of defendant's employees touched a breaker while working on the electrical system in the basement at the premises and it exploded. The defendant believes the breaker exploded because the insulators on the breaker panel were corroded. As a result of the explosion, plaintiff incurred the costs of installing a temporary electrical system, replacing the equipment destroyed by the explosion and defending a CT Page 2862 summary process action brought by its landlord for noncompliance of the lease.
The issue of fact that is in dispute and which is a necessary element in each of the six counts of the complaint is as the defendant Goodless Electric brief says, "should the defendant have commenced his work before shutting off the power" to the site which was being worked on under the contract and where the explosion occurred?
The claim that the defendant performed its work negligently is the basis on which the plaintiff seeks summary judgment as to each and every count of its complaint.
The plaintiff's claim that the issue of the defendant's negligence cannot be disputed is based upon the deposition of Mr. Leon Goodless, the defendant's president, and upon the affidavit of its expert Mark Recor, a licensed electrician. Mr. Recor in his affidavit states he reviewed the Goodless deposition and the defendant's proposal with regard to the electrical work to be performed at the plaintiff's premises. In its memorandum the plaintiff cites those portions of the deposition transcript which it believes show the defendant was negligent and more importantly which provide a basis for the opinion of its expert Recor that Goodless' testimony conclusively establishes negligence. The plaintiff notes Goodless said that the premises where the work was to be done had not been properly maintained or inspected for twenty years. He also indicated that the condition that led to the explosion was the dampness in the area. Goodless at more than one point described the conditions in the basement area where the work was to be done as "horrendous."
Mr. Goodless in his deposition also stated the electric system was illegally wired and violated the electric code and the conditions were a fire hazard. The existing electrical system was an inferior one produced by a manufacturer known in the industry to turn out inferior systems — their systems were "trouble." Goodless agreed that conditions in the work area were "an accident waiting to happen."
The plaintiff's references to the deposition are CT Page 2863 concisely laid out and fairly state Goodless' deposition testimony. Mr. Recor's affidavit then bases his opinion on these admissions by Mr. Goodless. He refers to the work to be done and Goodless' description of the work area to say that the condition of the work premises were in such a hazardous state that the defendant acted negligently in letting its employees work on the system while the power was on. "No electrician using reasonable safety standards" would have endangered himself or his employees by attempting to do the work while it was energized.
By failing to shut the power off, given the conditions of the premises which Goodless described, "the defendant created an unreasonable risk of an electric accident occurring." In what is an important summarizing paragraph of Recor's affidavit, Recor says:
 "10. Any electrician in the industry having the same knowledge and experience as Mr. Goodless would have recognized the likelihood of an accident occurring due to the extremely unsafe state of the electrical system in the compressor of the basement."
Therefore, as paragraph 11 goes on to aver, the accident which did occur was "a direct result of the defendant's failure to disconnect the power of the premises." Paragraphs 10 and 11 of the Recor affidavit really pose the question which the court believes is central to a resolution of the decision of this motion for summary judgment. Given the conditions of the area where the work was to be performed, would experienced people working in this industry have undertaken this job without shutting down the power?
Goodless Electric's defense to this summary judgment action could be said to begin with the Recor affidavit which seems to offer its own admission. Mr. Recor seems to acknowledge that Mr. Goodless is an electrician of "knowledge and experience." The Goodless deposition itself makes clear that Mr. Goodless, a licensed electrician here and in Massachusetts, can be qualified as an expert in his own right. He's been working at his company for over forty years, he has twenty or more electricians or journeyman electricians working for him. He described the extensive qualifications necessary to be licensed as an electrician. CT Page 2864 In his past, he did inspections for the FHA, he has a contractor's license and is an estimator. He certainly would appear to have qualifications equal to or greater than Mr. Recor.
Mr. Goodless, despite his candid description of what he called the horrendous conditions at the work site and the dangerous condition of the system, still said at the deposition that people in his business and his company would not shut the power down in this type of situation; "We are professionals. We know what we are doing." Despite the dangerous working area Goodless responded affirmatively that his people could work in the area with the power on. He said he couldn't tell what was in the switchgear; he couldn't get to look at the bus bars to see that the insulation was totally gone — that apparently is what presented the danger and triggered the explosion.
In a letter written to the court, counsel for the plaintiff counsel cites Capalbo v. Balf Company, 9 CSCR 154
(1994) for the proposition that the court shouldn't rely on Mr. Goodless' inadmissible speculation to rebut the claims of Recor. In that case, the plaintiff attempted to rely on hearsay from a customer of the business to provide a basis for his claim of emotional and mental distress. Here Goodless, who is apparently conceded by the plaintiff's own expert to be knowledgeable and experienced, who seems to be an expert in his own right, offers an opinion which he bases on claimed industry standards and his own judgment that differs from Recor. Goodless says in effect, despite the conditions of the work area it did not violate industry standards to work at this job site without shutting off the power — "it's common in (his) business." Interestingly the plaintiff's expert relies on Goodless observations and even conclusions about the conditions of the work site in forming his opinion. The plaintiff can't treat these observations as damaging admissions when used for its purposes then characterize portions of Goodless' testimony which are unfavorable to the plaintiff as some form of idle speculation.
Based on everything presented, a motion for summary judgment is not appropriate in a case which basically is a negligence case raising issues on the standard of care. Summary judgment is especially unsuited in negligence cases CT Page 2865 where "the ultimate issue in contention involves a mixed question of fact and law and requires the trier of fact to determine whether the standard of care was met in a specific situation." Pine Point Corporation v. Westport Bank Trust, 164 Conn. 54, 56 (1972); Cappiello v. Haselmann, 154 Conn. 490, 495 (1957); Farrell v. Waterbury Horse R.R. Co., 60 Conn. 239, 250 (1891); Amendola v. Geremia, 21 Conn. App. 35, 37 (1990), also see Fogarty v. Rashaw, 193 Conn. 442, 446 (1984).
Or perhaps to pose the problem more exactly for the purposes of this action, the cases do say that a motion for summary judgment should not be granted where there is a disputed issue of fact. But what is really involved here is a conflict of opinion between experts as to the appropriate standard of care given the facts surrounding the occurrence of this accident. The granting of summary judgment in a case involving the resolution of conflicting opinions by purported experts raises real problems for this court. Broad statements by an expert in affidavits relied by a moving party in a motion for summary judgment such as here which refer to "reasonable safety standards" or what any "electrician would do in the industry" must be subjected to the rigors of cross-examination due to their conclusory nature. For example, in one paragraph of his affidavit Recor says "in my opinion" by failing to shut the power off before beginning work the defendant created "an unreasonable risk of an electrical accident occurring" the "risk was foreseeable" given the dampness in the basement and the "hazardous condition of the electrical system. Once counter affidavits or depositions put in issue conclusions such as this, the question becomes as to every stated conclusion — why? Why was there an "unreasonable risk?" How was it "foreseeable?" What specific facts do you as an expert rely on to reach these particular conclusions?
How can a court, based on affidavits, resolve conflicts of opinion between experts about business standards and customs? It is not so much that a contested issue of fact exists but that all the facts necessary to decide the issue aren't before the court on a motion for summary judgment.
One other matter should be addressed by the court. CT Page 2866 The defendant's brief points to the deposition testimony of Mr. Goodless where Goodless claims a man named Joe Wright, who was in charge of all construction and maintenance for the plaintiff, insisted there be no shutdowns. The basis for Goodless' assumptions about Wright's job description and/or his authority to speak for the plaintiff concerning shutdowns is not clear. Capalbo v. The Balf Company, supra.
Furthermore, the court has some question about the appropriateness of considering this information in deciding summary judgment motion when the defendant has filed only an answer and has not raised this claim by way of special defense. The scope of Mr. Wright's authority in any event cannot be determined by Goodless' assertions in his deposition. These issues have not been addressed by the parties. In any event, the court will not consider this claim in reaching its decision.
The motion for summary judgment is denied, however, for the previously stated reasons.
Corradino, J.