STEPHEN DOKUS, ADMINISTRATOR (ESTATE OF JAMES SANDOR) *v.* HOWARD S. PALMER ET AL., TRUSTEES OF THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued May 7—decided July 7, 1943.

*Edwin H. Hall,* with whom, on the brief, was *James W. Grady,* for the appellants (defendants).

*John Keogh, Jr.,* with whom, on the brief, were *John Keogh* and *William O. Keene,* for the appellee (plaintiff).

DICKENSON, J. The plaintiff's intestate, Sandor, stepped off the steps of the defendants' train when the train was approaching a station at a speed of about forty miles an hour and was killed. The plaintiff brought this action, setting up, in a first count, intoxication of Sandor to the knowledge of the defendants, and their negligence thereafter in announcing the station, opening the door and failing properly to protect Sandor, and, in the second count, negligence of the same character in operating the train without reference to the intoxication of Sandor. The defendants denied these allegations and alleged contributory negligence as a defense to both counts. The jury returned a general verdict for the plaintiff. The defendants moved to set this aside as against the law and the evidence. The trial court denied the motion and the defendants appealed to this court from this denial and from the judgment, claiming error in the charge.

The jury might have found from the evidence that Sandor boarded a train of the defendants at South Norwalk at about 6 p.m. on June 1, 1942, and traveled thereon to Bridgeport, a distance of about fifteen miles; that he was seen by the defendants' head trainman, Shofkom, to have been drinking at that time; that Sandor boarded a train at 11:30 p.m. at Bridgeport to return to South Norwalk; that he was seen by Shofkom at that time to be very intoxicated; that it was the duty of a trainman to report to the conductor if a man so intoxicated as to be incapable of

looking out for his own safety got aboard the train; that the train made but one stop between Bridgeport and South Norwalk, and as it approached South Norwalk and was about one and one-half miles from it a trainman announced the station; that about three-quarters of a mile from the station a trainman opened the trap door covering the steps leading from the car in which Sandor was riding; that Sandor left his seat, walked down the aisle into the vestibule, grasped the stair rail, descended the stairs and stepped off into space. There was no manifestation of intoxication while Sandor was on the train. The defendants claim that there was not sufficient evidence that Sandor was incapacitated by intoxication to require special care of him on their part, that they were not negligent otherwise and that he was guilty of contributory negligence as a matter of law.

The duty of the defendants as a common carrier of persons was "to use the utmost care consistent with the nature of its business to guard its passengers against all dangers which might reasonably and naturally be expected to occur, in view of all the circumstances." *Robinson* v. *Connecticut Co.*, 122 Conn. 300, 301, 189 Atl. 453. A common carrier, having upon its train a passenger who is so intoxicated as not to be able to look out for his own safety, when it knows or in the exercise of reasonable care should know his condition, is bound to exercise a degree of care for his protection commensurate with his inability to guard himself from danger. *Fagan* v. *Atlantic Coast Line R. Co.*, 220 N. Y. 301, 307, 115 N. E. 704; *Wheeler* v. *Grand Trunk Ry. Co.*, 70 N. H. 607, 613, 50 Atl. 103; *Price* v. *St. Louis, I. M. & S. Ry. Co.*, 75 Ark. 479, 490, 88 S. W. 575; *Sullivan* v. *Seattle Electric Co.*, 44 Wash. 53, 61, 86 Pac. 786; 2 Moore, Carriers (2d Ed.), p. 1195. The rule imposing the duty is the same

rule which applies wherever a passenger is for any reason not capable of self-protection, to the knowledge, actual or constructive, of the carrier. *Warren* v. *Pittsburgh & B. Ry. Co.,* 243 Pa. 15, 19, 89 Atl. 828; Thompson, Carriers of Passengers, p. 271; 1 Beven, Negligence (4th Ed.), p. 178. One of the most usual examples is that of a young child traveling alone; of such a situation, we have said: "The care to be exercised toward a young child traveling by himself must be proportioned to the degree of danger inherent in his youth and inexperience." *Roden* v. *Connecticut Co.,* 113 Conn. 408, 410, 115 Atl. 721.

The standard of care which a person is ordinarily required to exercise to guard his own safety is that of a reasonably prudent man; it is "an external standard, and takes no account of the personal equation of the man concerned." *Marfyak* v. *New England Transportation Co.,* 120 Conn. 46, 48, 179 Atl. 9, quoting *The Germanic,* 196 U. S. 589, 596, 25 Sup. Ct. 317. Intoxication is not in itself negligence, but it does not, at least where the intoxicated person has not completely lost the use of his faculties, excuse the failure to exercise the care which a reasonably prudent person would use; in fact, its existence may strengthen the probability of negligence. *Zenuk* v. *Johnson,* 114 Conn. 383, 388, 158 Atl. 910; *Kupchunos* v. *Connecticut Co.,* 129 Conn. 160, 163, 26 Atl. (2d) 775. It would be difficult to absolve the deceased from the charge that he was guilty of negligence as matter of law in stepping off a train moving as rapidly as was the one involved in this case. *Brown* v. *New York, N. H. & H. R. Co.,* 181 Mass. 365, 367, 63 N. E. 941; *Morrison* v. *Erie Ry Co.,* 56 N. Y. 302; 5 Elliott, Railroads (3d Ed.), § 2472. The circumstances before us, however, are such that his negligence in so doing will not defeat a recovery by the plaintiff. This is not because,

as in *Hoyt* v. *New York, N. H. & H. R. Co.*, 78 Conn. 709, 712, 63 Atl. 393, the negligence of the defendant was such as to make the conduct of the deceased a remote cause in the usual meaning of that term, for in the instant case his death was directly and immediately due to his own act in walking down the steps and off the train. The reason why his want of care will not defeat a recovery is that the jury could not reasonably have found otherwise than that his conduct was due to the very condition against the dangers of which it was the duty of the defendants to guard him. This appears to have been the basis of the opinion in *Wheeler* v. *Grand Trunk Ry. Co.*, supra, as we understand it, for the court said (p. 620): "Leaving out of sight the immaterial fact of the cause of the plaintiff's incapacity, the question is whether a jury may not find that, in the exercise of the care in transportation required of them, a railroad corporation, knowing that a passenger is in a dangerous position, —the danger of which he does not know, and which they know he is ignorant of and powerless to avoid,— are under obligation to do something to prevent the injury. To this question there can be but one answer upon reason and the authorities." The principle is the same as that stated in the Restatement, 2 Torts, § 443: "An intervening act of a human being or animal which is a normal response to the stimulus of a situation created by the actor's negligent conduct, is not a superseding cause of harm to another which the actor's conduct is a substantial factor in bringing about." That the deceased disregarded ordinary precautions for his own safety was a result which naturally followed the failure of the defendants properly to guard against actions such as those which resulted in his death. The negligence of the defendants was the proximate cause of his death, not his conduct in walking off the train as

he did. *Kramer* v. *Chicago, M., St. P. & P. R. Co.,*
226 Wis. 118, 128, 276 N. W. 113; *Brown* v. *New York
Central R. Co.,* 53 Fed. (2d) 490, affd., *New York
Central R. Co.* v. *Brown,* 63 Fed. (2d) 657.

That Sandor was in fact intoxicated to such an
extent as to be mentally incapacitated hardly admits
of dispute in view of his final act. Stepping off the
train in the manner he did is the best indication that
he was unable to take care of himself and the evidence
of his earlier condition furnishes the reason. But,
while the jury had all of this evidence of his incapac-
ity before them, the defendants at the time of the
accident had not. So the case turns upon the question
whether the defendants had or should have had suffi-
cient indication at that time that he was incapacitated
from caring for himself to charge them with a care
that they failed to use. In considering this question
we bear in mind that it was primarily one of fact for
the jury to decide and their decision may not be dis-
turbed unless it is manifestly against the evidence;
*Horvath* v. *Tontini,* 126 Conn. 462, 11 Atl. (2d) 846;
and that the fact that the judge who heard the evi-
dence refused to set aside the verdict is entitled to
great weight. *Yasevac* v. *New Haven & Shore Line
Ry. Co., Inc.,* 126 Conn. 27, 29, 9 Atl. (2d) 278.

The jury might reasonably have concluded that, as
the defendants' head trainman had seen that Sandor
was very intoxicated when he boarded the train on his
return trip, the defendants reasonably should have
anticipated that when the station was announced a
short time later a person in Sandor's condition might
arise and attempt to alight, and that when thereafter
the trainman lifted the trap door with the train run-
ning at forty miles an hour the defendants failed to
use reasonable care for Sandor's safety in the light

of knowledge they had of his condition. The trial court did not err in refusing to set aside the verdict.

The defendants assign error in three of the court's findings of the plaintiff's claims of fact. Corrected they would not materially affect the decisive issue of the case and we deem it unnecessary to discuss them. In various assignments of error the defendants attack the charge in that the trial court did not comply with their requests to charge in form or substance and failed properly to charge as to negligence and contributory negligence as related to the issues. The court is under no duty to charge in the language of requests and "its duty is performed when it gives instruction calculated to give the jury a clear comprehension of the issues presented . . . and suited to their guidance." *Braithwaite* v. *Lee*, 125 Conn. 10, 15, 2 Atl. (2d) 380. There is no support for the defendants' claim that the court erred in failing to instruct the jury that if Sandor was not intoxicated to the point of incapacity to care for his own safety the defendants owed him no duty different from that owed any other passenger. The court charged as to the general duty of a common carrier and as to the particular duty it owed one known to it to be incapacitated from caring for his own safety, and that it was the incapacity, not the intoxication, that was determinative of the latter degree of care.

The defendants' request to charge that if Sandor was not in a helpless state, but his intoxication caused him to step from the moving train, he was guilty of negligence as a matter of law was properly denied. *Wheeler* v. *Grand Trunk Ry. Co.*, supra. The defendants claim error in that the court charged the jury in effect that the defendants would not ordinarily be negligent in announcing the station and opening the trap door, but it was a question for them to decide whether this was negligence under the particular cir-

cumstances in the case. They claim that under no circumstance would this be negligence. The cases they cite do not fully support their claim. *England* v. *Boston & Maine Railroad,* 153 Mass. 490, 492, 27 N. E. 1, held that the announcement of the station cannot be regarded as an invitation to alight as a matter of law and that it was not an invitation in fact under the circumstances of the case. *Hooker* v. *Blair,* 189 Mich. 278, 155 N. W. 364, relates, principally, to contributory negligence of the passenger. *Gayle's Administrator* v. *Louisville & N. R. Co.,* 163 Ky. 459, 173 S. W. 1113, flatly holds that the announcement of the station and the opening of the vestibule doors are not an invitation to alight until after the car stops. *Mearns* v. *Central R. of N. J.,* 139 Fed. 543, 545, 71 C.C.A. 331, agrees with *England* v. *Boston & Maine Railroad,* supra, and quotes from this case that the announcement of the station was not an invitation as a matter of law. In our own case of *Elwood* v. *Connecticut Ry. & Lt. Co.,* 77 Conn. 145, 149, 58 Atl. 751, we held that under certain circumstances it was a question of fact rather than of law. None of these cases relates to the special duty imposed upon a carrier transporting an irresponsible passenger. The trial court properly left it to the jury to decide whether the announcement of the station and opening of the trap door were negligence in view of the circumstances, having by implication referred to Sandor's incapacity as one of those circumstances.

The defendants' final claim of error concerns a charge to the effect that, if Sandor was not intoxicated to the point of incapacity, "then it might very well be that the degree of care required ... was not that which of course we all recognize would be required if he was intoxicated to such an extent as to incapacitate him." The defendants' claim, as we see it, is that the effect

ot this charge was to indicate to the jury that even if Sandor was not intoxicated to the extent that it incapacitated him the defendants owed him a greater degree of care than if he had been sober. This instruction while somewhat ambiguous did not constitute reversible error in view of the other instructions concerning the degree of incapacity necessary to impose a special duty upon the defendants. "The charge is to be read as a whole and error cannot be predicated upon detached sentences or portions of it." *State* v. *Murphy*, 124 Conn. 554, 566, 1 Atl. (2d) 274; *State* v. *Hayes*, 127 Conn. 543, 585, 18 Atl. (2d) 895.

There is no error.

In this opinion the other judges concurred.