John M. DOWNEY, Plaintiff-Appellant,

v.

MOORE'S TIME–SAVING EQUIPMENT, INC., Defendant-Appellee.

No. 18098.

United States Court of Appeals, Seventh Circuit.

Sept. 8, 1970.

———◆———

Dempsey A. Cox, South Bend, Ind., for plaintiff-appellant.

Arthur A. May, S. J. Crumpacker, South Bend, Ind., of Crumpacker, May, Levy & Searer, South Bend, Ind., for defendant-appellee.

Before KILEY, CUMMINGS and PELL, Circuit Judges.

KILEY, Circuit Judge.

Plaintiff Downey was injured while operating a mechanical rug-washer manufactured by defendant Moore's Time-Saving Equipment, Inc. (Moore). Downey thereafter brought this diversity suit for recovery of damages, and alleged negligence, breach of implied and express warranties, and strict liability. The District Court for the Northern District of Indiana, without a jury, gave judgment for Moore, and Downey appealed. We affirm.

Plaintiff Downey purchased the rug-washer directly from defendant Moore, and on May 15, 1965, it was put into operation at Downey's place of business. The machine was used mainly by Downey's employee Armstrong who had been designated by Downey to be in charge of the machine's operation. The function of the machine was to scrub rugs. Occasionally in the process rugs would wrinkle and the machine's scrubber-rollers would have to be lifted while the rug was straightened. The scrubber-rollers were lifted by a "cam-lift mechanism."

The cam-lift was actuated by a 16″ hollow metal handle placed on a stud on the cam. The operator, to raise the rollers, would push the handle through an arc of more than 180 degrees to pass through a dead center position where the force of gravity would hold the scrubber-rollers safely and protect the operator from danger of counter-rotation of the handle. With reference to a clock face, the top dead center of the cam or up position is at approximately 12 o'clock, and the bottom dead center or down position is at approximately 6 o'clock, and beyond these two points the cam cannot move. The handle, to lift the rollers, would be at a 9 o'clock position and would be pushed upward to more than 3 o'clock[1] in order to put the cam eccentric in the top dead center position and to assure no counter-rotation of the handle from vibrations of any sort. To lower the rollers the handle would be pulled back to 9 o'clock in order to put the cam in its stable starting position. Short of these positions, beyond which the handle could not be moved due to a mechanical stop, any jarring of the mechanism might cause the counter-rotation.

Plant superintendent Armstrong had been given instructions by Moore's engineer Bost when the machine was installed. Armstrong and another employee, McGovern, whom Armstrong had instructed, operated the machine for about two weeks without mishap. Downey had not observed the machine in operation and had not been instructed by Bost. However, he used the machine, and a rug being washed wrinkled. Downey pushed the cam-lift handle short of the required 180 degree arc, the handle counter-rotated and hit him in the eye. This suit followed.

The district court concluded from its fact findings that Moore was guilty of no negligence, breach of warranty or of strict liability which proximately caused Downey's injury; that in operating the cam-lift mechanism Downey "assumed and/or incurred the risk" of injury; and that his "misuse" of the mechanism was the proximate cause of his injury.

---

1. The lift mechanism was designed and constructed to travel 190 to 195 degrees, or 10 to 15 degrees beyond top dead center, to create a gravitational lock. These extra degrees of movement, according to the defendant, constitute the safety feature of the lift mechanism.

## I.

Moore contends here that the following findings lack substantial evidentiary support and are clearly erroneous: (a) There is no inherent danger in the cam-lift mechanism. (b) There was no latent or hidden defect which made the mechanism inherently dangerous. (c) Downey at all times knew of the required degree of rotation necessary to prevent counter-rotation. There is no merit in the contention.

■ As to finding (a), Downey claims it contradicts the testimony of the designer of the mechanism and the scientific principles controlling the operation of the mechanism. There is evidence that before the night of Downey's injury Armstrong and McGovern operated the cam-lift mechanism about once a night for about two weeks and during that period and on that night had used it before and after Downey's injury— and the mechanism worked "very well." There is evidence of the designer that there was nothing in the mechanism which prevented the handle from moving to the stop at 3 o'clock, and testimony of Moore's expert whose tests showed the stability of the handle at the 3 o'clock position and its increasing instability at points short of that position. His opinion was that the cam-lift was not unsafe and its operation created no unusual hazards, and that it was a satisfactory engineering solution to the problem of raising the rollers. The district court's finding to that effect is not erroneous.

It is of no importance that the designer and expert differed in parts of their testimony. The designer said that the counter-rotation when the handle did not go to the stop or "built-in lock" position was "inherent" in the scientific principles. He did not say the inherency of the automatic counter-rotation rendered the mechanism unsafe. We see no basis for applying here the decision in Hicks v. United States, 368 F.2d 626, 631–632 (4th Cir.1966).

As to finding (b), concededly there was no instruction manual for operating the cam-lift mechanism, no written instructions given, no warnings on the machine or markings indicating how far to rotate the handle.

A defective condition, however, is one "not contemplated by the * * * user and which is 'unreasonably dangerous' to him or his property, that is, more dangerous than would be contemplated by the ordinary * * * user with the ordinary knowledge of the community as to its characteristics and uses." Greeno v. Clark Equipment Co., 237 F.Supp. 427, 429 (N.D.Ind. 1965). *See also* this court's approval of Judge Eschbach's quoted *Greeno* statement in Posey v. Clark Equipment Co., 409 F.2d 560, 563 (7th Cir.) cert. denied 396 U.S. 940, 90 S.Ct. 374, 24 L.Ed.2d 242 (1969). Downey's argument presupposes an inherent danger or "unreasonably dangerous" device. This presupposition is not justified on this record. Moreover, Downey was not an "ordinary user with the ordinary knowledge of the community." He had declined instruction from Bost, had instruction from Armstrong, "fiddled" with the mechanism, knew the handle could counter-rotate having been told it had to "go up and over" and had experienced the counter-rotation on one occasion when he pushed the handle only to 12 o'clock.

■ He argues however that he did not know of the "built-in" stop but only that it had to be pushed to a point where it would remain. He testified he knew "that if I didn't push it over far enough, it would come back." There is ample support for the finding that there was no hidden or latent defect or inherent danger. It is not erroneous.

Finding (c). We are unpersuaded by the argument that although Downey knew if he did not push the handle far enough it would counter-rotate, he did not know it should be moved 180 degrees or more.

■ Employees Armstrong and McGovern knew that in use of the cam-lift mechanism the handle had to be rotated to the 3 o'clock position until it came

against the mechanical stop. The district court could well have thought that Downey, having been told what his employees Armstrong and McGovern knew from Bost, was aware of the required degree of rotation. The finding is not clearly erroneous.

■ We are not persuaded by Downey's argument that Moore should not be immunized from liability because it instructed Armstrong, since Downey declined personal instruction from Bost and directed him to advise Armstrong instead. Downey is in no position to profit by his lack of warning or instruction.

### II.

■ Downey challenges as erroneous the district court's conclusion that Moore was not guilty of negligence proximately causing Downey's injury. His argument presupposes that the cam-lift device was negligent in design, inherently dangerous. The district court here could well have decided that as to design, the mechanism, in the careful hands of Armstrong and McGovern, was not dangerous for its intended use. Since the findings of fact underlying the conclusion are not clearly erroneous, the presuppositions are unwarranted.

Our decision in Posey v. Clark Equipment Co., *supra*, a diversity case controlled by Indiana law, does not support Downey's challenge. We said there, at 563, that a manufacturer has no duty to warn if the danger is obvious. Here where the danger was, or should have been, obvious to Downey, since he had previously experienced the counter-rotation and knew of the required degree of rotation necessary to prevent counter-rotation, the *Posey* statement referred to supports the court's decision.

We see no merit therefore in the claim that the court erred in not concluding on this record negligence in

Moore's failure to adequately warn Downey. Moore was not required to foresee and protect Downey from his own negligence. Here again Downey's argument presupposes that the district court's relevant finding of fact—that there was no latent or hidden defect rendering the mechanism dangerous—is erroneous, whereas we find substantial evidence justifying the finding.

■ Downey contends also that the district court erred in concluding that Moore was not guilty of breaching its implied warranty of fitness of the mechanism for its intended use. We think this contention falls in view of the ample testimony of the use of the mechanism by Armstrong and McGovern before and after Downey's injury when it functioned "very well." And the testimony could well have justified the district court's inference that what danger there was in operating the device was known to Downey who did not apply the knowledge he had but on the contrary misused the device. The court found, on substantial evidence, that the mechanism functioned "precisely" in the manner that its design intended it to function. The conclusion challenged is not erroneous.

■■ The final challenge is that the court erred in concluding that there was no duty owing to Downey by Moore, nor breach if there were duty, that would support liability under the doctrine of "strict liability." Downey argues— again on a presupposition not warranted because of our determinations on the district court's findings of fact—that Moore, although knowing of the "inherent danger" of counter-rotation, did not mark or identify the positions of safety to which the handle should have been moved [2] nor give oral or written instructions. This is substantially saying that there was a defective condition as required by the products liability doctrine.

2. Downey's arguments include charges with respect to his lack of knowledge that the handle should be removed and put away after each operation. Bost testified, with demonstrations, that he told Armstrong about this and showed him how to remove, and where to place, the handle.

For reasons given in our discussion of previous challenges, we see no merit in this challenge. Under Indiana law Downey had the burden under the strict products liability doctrine to prove the existence of a latent defect or danger which he had no knowledge of. Furthermore, it is clear that a person with knowledge Downey had or should have had could not recover under the products liability doctrine. Blunk v. Allis-Chalmers Mfg. Co., Ind.App., 242 N.E.2d 122 (1968).

### III.

Finally Downey contends that he was not guilty of contributory negligence, and did not assume the risk of the counter-rotation of the handle under the Indiana rule announced in Coleman v. DeMoss, Ind.App., 246 N.E.2d 483, 488 (1969). He challenges the conclusions of the district court to those effects.

■■■ It is true, as he states, that contributory negligence is a defense only to the negligence charge. On the other hand, the court concluded that no misconduct charged against Moore proximately caused Downey's injury and that his own negligence was the proximate cause. The court concluded also, and importantly, that Downey was guilty of misuse which, under Greeno v. Clark Equipment Co., 237 F.Supp. 427, 429 (N.D.Ind.1965), "would either refute a defective condition or causation." We think Downey's argument that the record does not justify the court's inference that he was guilty of misuse is specious. His argument presupposes he did not have adequate instruction or knowledge. We again point out the presuppositions are unwarranted in view of our discussions hereinabove. Furthermore the court's conclusion as to assumed risk is within the *Coleman* doctrine; Downey had knowledge of the danger of counter-rotation, appreciated it or should have, and by using the mechanism with these factors voluntarily assented.

For the reasons given, the judgment is affirmed.