GERHARD HOELTER *v.* MOHAWK SERVICE, INC., ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued November 5, 1975—decision released April 6, 1976

Bernard J. Virshup, with whom was Geoffrey A. Hecht, for the appellant (plaintiff).

William B. Rush, with whom was Kay Parker Jex, for the appellee (named defendant).

Gregory C. Willis, with whom was John P. Chiota, for the appellee (defendant Perelli Atlantic, Inc.).

HOUSE, C. J. This appeal arose from a one-car accident which happened in January, 1971. We begin our consideration of the merits of the appeal by a brief recital of the facts which the jury could have found from the evidence viewed in the light most favorable to sustaining the verdict which was in favor of both defendants. *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 555, 316 A.2d 394; *Hally* v. *Hospital of St. Raphael*, 162 Conn. 352, 359, 294 A.2d 305.

On January 21, 1971, the plaintiff, aged 64, was operating his 1964 MGB sports car in an easterly direction on the Merritt Parkway in Greenwich, returning home from work. A coworker, Charles Ehrlinger, was a passenger in the front seat beside him. The posted speed limit was 55 miles per hour, the weather was clear and the road was dry. At a point east of the North Street overpass, the plaintiff passed a car being operated by Lawrence J. Albertini who was traveling approximately 55 to 58 miles per hour. The Hoelter vehicle shot past the Albertini car "as though he were standing still" and was traveling in excess of 70 miles per hour. Immediately before this passing, Ehrlinger was

yelling at the plaintiff to slow down and as they passed the Albertini car he looked at the speedometer which read 80 miles per hour. At this point, the parkway was on a downgrade with a sharp left-hand curve. After passing the Albertini car, the plaintiff maintained his speed and when he was 5 to 8 car lengths ahead attempted to cut over from the left-hand lane into the right-hand lane at too sharp an angle. At this point, the Hoelter vehicle started to fishtail. Hoelter applied his brakes and the car went out of control, headed left, then turned right across the highway, struck a guardrail on the right-hand side of the road and then traveled diagonally across the road to the left, striking the median divider and coming to rest at a point 340 to 350 feet from where the fishtailing started. Both the plaintiff and Ehrlinger sustained injuries in the crash.

At the time of the accident, Hoelter's MGB was equipped with 5.60.14 Perelli[1] studded snow tires known as Inverno Etnas, manufactured by the defendant Perelli Atlantic, Inc. He had purchased them from the defendant Mohawk Service, Inc. The stud holes in the tires were predrilled by Perelli during the manufacturing process and the studs were installed by Mohawk, being inserted into the stud holes by means of an air pressure gun. Hoelter used the tires for seven days before the accident, driving approximately 400 miles.

Hoelter sued both Perelli and Mohawk claiming that he was operating his car at less than 55 miles

---

[1] The record discloses a discrepancy in the spelling of this name. In the complaint and judgment, it is spelled "Perelli." The brief of the defendant spells it "Pirelli." We have used the spelling as it appears in the judgment.

an hour and that the accident was caused by the manner in which the metal studs had been inserted. Both defendants claimed that the accident was caused by the manner in which Hoelter operated his vehicle under the circumstances existing at the time of the accident. The jury returned a verdict in favor of both defendants.

Hoelter's passenger, Ehrlinger, sued Hoelter, Mohawk and Perelli. The two cases were consolidated and tried together. In Ehrlinger's case, the jury returned a verdict in favor of Ehrlinger against Hoelter and Mohawk and in favor of Perelli.

We are not concerned with the Ehrlinger case except as the evidence introduced in that consolidated case may be relevant on the present appeal which has been taken by Hoelter from the judgment rendered on the verdict in favor of the defendants Mohawk and Perelli.

It is unnecessary to summarize the pleadings in greater detail than to note that the plaintiff's cause of action against both defendants sounded, in separate counts, in negligence and in strict liability and that in addition to denials both defendants pleaded that the plaintiff's own negligence was a proximate cause of any injury or damages he had sustained.

On his appeal, the plaintiff has briefed four claims of error: (1) that the court erred in charging that contributory negligence in the sense of failure to operate a motor vehicle, as to control and speed, with the care of a reasonably prudent person constituted a defense to an action in strict tort liability;

(2) that it erred in charging that the jury could infer from damage and distance traveled the rate of speed of the plaintiff's vehicle without benefit of expert testimony; (3) that the court erred in failing in its charge to the jury to define the phrase "prima facie evidence" and to apply it to the evidence in the case; and (4) that the court erred in denying the plaintiff's motion to set aside the verdict on the grounds that the plaintiff did not receive a fair trial because "the court's interplay with the jury, during the course of the jury deliberations, (1) was tantamount to coercion and (2) constituted an impermissible invasion of the jury function."

The question whether the negligence of a plaintiff which is a proximate cause of injuries which he has sustained is a defense to his action in strict tort liability has not previously been decided by this court. In *Rossignol* v. *Danbury School of Aeronautics, Inc.*, 154 Conn. 549, 227 A.2d 418, and *Garthwait* v. *Burgio*, 153 Conn. 284, 216 A.2d 189, we recognized the existence of a right of action sounding in tort based "on the public policy of protecting an innocent buyer from harm rather than on the ensuring of any contractual rights." *Hamon* v. *Digliani*, 148 Conn. 710, 716, 174 A.2d 294. We expressed ourselves as in accord with the rule adopted in § 402A of the Restatement (Second) of Torts. The basic principle underlying strict tort liability is the recognition of the existence of a duty on the part of the seller of a product not to sell any product in a defective condition unreasonably dangerous to the user or consumer or to his property and that a seller who breaches this duty is subject to liability for physical harm caused thereby to the ultimate user or consumer or to his property if the seller is engaged in the business of selling such a

product and it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. Liability to the user or consumer for breach of this duty attaches regardless of whether or not there exists any contractual relation or privity of contract between the seller and the user or consumer. Restatement (Second), 2 Torts § 402A.

When we recognized the validity of the principle of strict liability in tort as set out in § 402A of the Restatement, the rule of contributory negligence in tort actions was already well settled. It is predicated on the settled principle that it is "elementary that one cannot recover for a wrong brought about by his own acts." *Cardona* v. *Valentin,* 160 Conn. 18, 27, 273 A.2d 697. It is incumbent upon every person to use reasonable care under the circumstances, that is, the care which a reasonably prudent person would use under the circumstances. *Darling* v. *Burrone Bros., Inc.,* 162 Conn. 187, 198, 292 A.2d 912; *Dokus* v. *Palmer,* 130 Conn. 247, 251, 33 A.2d 315; *Marfyak* v. *New England Transportation Co.,* 120 Conn. 46, 48, 179 A. 9; *Farrell* v. *Waterbury Horse R. Co.,* 60 Conn. 239, 248, 21 A. 675, 22 A. 544; *Dexter* v. *McCready,* 54 Conn. 171, 172, 5 A. 855. Negligence is the failure to use such care and the engaging in conduct which creates an undue risk of harm. "Negligence is conduct which creates an undue risk of harm to others. Contributory negligence is conduct which involves an undue risk of harm to the person who sustains it." Restatement (Second), 2 Torts § 463, comment b. The concept is well expressed in 57 Am. Jur. 2d, Negligence, § 288, p. 685: "Contributory negligence differs from primary negligence, which involves a breach of duty to others, in that contributory negligence involves

an undue risk of harm to the actor himself, and might better be described as contributory fault, or contributory misconduct."

That such contributory fault or misconduct which is a proximate cause of injuries which a plaintiff has sustained will bar his recovery of damages from a defendant who is also guilty of a breach of duty which has proximately caused his injuries is well settled. It appears to have been first enunciated in *Butterfield* v. *Forrester,* 11 East 60, 103 Eng. Reprint 926 (1809) in which case Lord Ellenborough, C. J., observed: "A party is not to cast himself upon an obstruction, which has been made by the fault of another, and avail himself of it, if he does not himself use common and ordinary caution to be in the right. One person being in fault will not dispense with another's using ordinary care for himself. Two things must concur to support this action; an obstruction in the road, by the fault of the defendant, and no want of ordinary care to avoid it, on the part of the plaintiff." The *Butterfield* decision was cited with approval by this court in *Beers* v. *Housatonic R. Co.,* 19 Conn. 566, 573, and, forty years later in 1890, in *Broschart* v. *Tuttle,* 59 Conn. 1, 20, 21 A. 925, this court stated: "The principle that negligence on the part of the plaintiff contributing to his injury will prevent a recovery, is universally accepted. There can be no good ground for distinction in this respect between negligence and any illegal act which is a contributing cause of the injury." The court also made the following pertinent observation: "It is no more unjust in principle to allow an injured person to recover compensation in damages from an entirely innocent third party, than it is to allow him to recover for a self-inflicted injury. The real principle is the

same, (although the degree of injustice may not be,) whether the plaintiff was the sole author of his injuries or whether his illegal act or fault combined with that of the defendant to produce them, for, in such case, it is impossible to apportion the damages or to determine the relative responsibility of the parties, or whether the plaintiff would have been injured at all except for his own contribution to the result."

It may safely be stated that "[a]ll authorities agree that plaintiffs in tort actions may so conduct themselves as to bar recovery for injuries suffered by them. This recovery-barring conduct, while given different labels, is ofttimes treated within the general concept of 'contributory negligence.' " *Williams v. Brown Mfg. Co.*, 45 Ill. 2d 418, 425, 261 N.E.2d 305.

The problem of "labels" referred to in the *Williams* case is clearly apparent in the cases and treatises which have considered the problem of contributory fault as a defense in an action based on strict tort liability. As the annotation in 46 A.L.R.3d 240, entitled "Products Liability: Contributory Negligence or Assumption of Risk as Defense under Doctrine of Strict Liability in Tort," notes (p. 247): "Courts and commentators have discussed at length the conceptual and semantic difficulties which are the source of some confusion in the cases collected herein, generally concluding that most apparent conflicts reflect differences in terminology rather than disagreement over the applicable legal principles." To the same effect, see Frumer & Friedman, 2 Products Liability § 16A [5]; Prosser, "Strict Liability to the Consumer in California," 18 Hastings L.J., pp. 9, 50; Epstein, "Products Lia-

bility: Defenses Based on Plaintiff's Conduct," 1968 Utah L. Rev. 267, and cases therein summarized and discussed.[2]

We deem it unnecessary to discuss the many cases cited and discussed in the above-mentioned annotation and articles and the problems of labels and semantics apparent therein. We see no reason why our long-established principles of tort law governing the right of a plaintiff to recover for damages he has sustained as a proximate result of a defendant's breach of a legal duty and our equally well established principle of tort law that such a recovery will be barred when the contributory fault or breach of duty of the plaintiff has also been a proximate cause of that injury should not apply in actions for strict liability in tort.

The concept of strict tort liability on the part of manufacturers and sellers of defective products is a relatively new development in the general field of torts in which field the concept of contributory fault or breach of duty as a bar to recovery had long existed, applicable chiefly in negligence cases. The American Law Institute, in adopting the principle of strict tort liability in products cases as set out in § 402A of the Restatement (Second) of Torts, recognized the interrelationship of the two concepts. In its comment a to § 402A, the institute stated: "The Section is inserted in the Chapter dealing with the negligence liability of suppliers of chattels, for convenience of reference and comparison with other

[2] For a learned discussion on the various uses of the term "negligence," see the opinion of Justice Hamersley in *Nolan* v. *New York, N.H. & H.R. Co.*, 70 Conn. 159, 187, 39 A. 115, in which he notes "the confusion caused by a failure to distinguish, when the word 'negligence' is used, the precise one of its many meanings intended to be expressed through the particular use."

Sections dealing with negligence." It does not suggest the imposition of absolute liability as distinguished from strict liability. It recognizes the existence of the standards of normal and abnormal use, expressly declaring in comment h that "[a] product is not in a defective condition when it is safe for normal handling and consumption" and "[i]f the injury results from abnormal handling . . . the seller is not liable." The Restatement is sparse in its discussion of the question of whether or to what extent the contributory fault or breach of duty on the part of the user of the product should bar recovery. Consistent with the concept that "the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it" (comment c), the Restatement notes in comment n that "[c]ontributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence." At the other extreme from such "mere" failure to discover a defect or guard against the possibility of the existence of a defect the Restatement notes that the defense which "commonly passes under the name of assumption of risk" is available to the seller if the user or consumer discovers the defect, is aware of the danger and "nevertheless proceeds unreasonably to make use of the product and is injured by it." The present case obviously falls between these two extremes.

We are convinced that in the concept of strict liability in tort in defective product cases there is nothing to justify holding the seller for the consequences of the user's own contributory fault or

breach of duty in the use of the product which conduct is a proximate cause of the injury he has incurred. If such contributory fault and breach of duty cannot be separated from the consequences of the defendant's breach of duty which gives rise to strict tort liability, we see no reason why the elementary principle should not apply "that one cannot recover for a wrong brought about by his own acts." *Cardona* v. *Valentin,* 160 Conn. 18, 27, 273 A.2d 697. A manufacturer or seller is entitled to expect a normal use of his product and we see no good reason why the doctrine of strict liability in tort should be extended to negate that expectation. We are of the view that with the exception noted in Restatement (Second), 2 Torts § 402A, comment n, with respect to discovery, where a plaintiff fails to act as a reasonably prudent person in relation to the use of a product which comes into his control under circumstances imposing strict tort liability on the manufacturer or seller and that conduct is a proximate cause of his injury he cannot recover. This is but the application to cases of strict tort liability of the same principle which under the broad designation or label of "contributory negligence" applies in tort negligence cases— that one cannot recover for an injury brought about by his own act and is barred from recovery when his own lack of reasonable care in the use of the product is a proximate cause of his injury.

In its charge to the jury, the court properly instructed them in accordance with our established legal principles in tort cases. It informed them that "contributory negligence is a defense in strict liability when the conduct of the person claimed to have been injured by the alleged defective product has to do with use of that particular product." It

is unnecessary to decide whether the court was correct in specifically limiting the jury to a consideration of only two of the defendants' several specifications of contributory negligence—speed and control. Certainly the plaintiff was in no way harmed by this limitation. The charge was a lengthy one and no useful purpose would be served by repeating it verbatim. It suffices to note that the jury were instructed that the plaintiff "had the duty not to misuse the studded tires or to use them in an abnormal way. He had the duty of using the tires in a way that a reasonably prudent person, under all the circumstances such [sic] he knew, would use the tires by driving at a reasonable speed under the circumstances and by keeping the car under reasonable control." The court fully and properly charged on the principles of contributory negligence, the duty of the parties to exercise the care of a reasonably prudent person under the existing circumstances, proximate cause and the application of all these principles to the facts in the case as the jury should find them to be. We find no merit to the plaintiff's assignment of error addressed to this portion of the charge.

The plaintiff phrases the second issue raised on his appeal as: "Whether the court erred in charging that the jury could infer, from damage and distance traveled, the rate of speed of the plaintiff's vehicle without the benefit of expert testimony?" In his argument, the plaintiff relies largely upon our decision in *Toomey* v. *Danaher,* 161 Conn. 204, 286 A.2d 293. That case involved the crash into a guardrail of a car whose body was constructed of fiber glass and to which accident there were no eyewitnesses who testified. Our decision expressed the opinion (p. 210) that "the extent of damage to this

type of vehicle, at a high rate of speed, on collision with a metal guardrail, does require expert testimony before a jury reasonably may conclude that the vehicle was traveling in excess of that [reasonable] speed" and (p. 212) that "[a] conclusion of common-law negligence on the facts of this case could have only resulted from conjecture or guess." In the subsequent case of *Waldron* v. *Raccio,* 166 Conn. 608, 353 A.2d 770, we referred to those "special circumstances" which existed in the *Toomey* case and to the different situation which exists when there is direct evidence in the case as to the vehicle's speed and the reasonableness of that speed in the circumstances even apart from the damage it sustained—as was the situation in the present case where three eyewitnesses testified as to the speed of the plaintiff's car. As we noted in the *Waldron* case (p. 612): "Excessive speed may ordinarily be proved by circumstantial evidence, such as vehicular damage and distance traveled after the application of brakes, without expert testimony as to its significance," citing *Terminal Taxi Co.* v. *Flynn,* 156 Conn. 313, 318, 240 A.2d 881, and *Petrillo* v. *Kolbay,* 116 Conn. 389, 393–94, 165 A. 346.

The court properly charged the jury on their use of circumstantial evidence and inferences which might reasonably be drawn therefrom. In that context, the court referred to the circumstantial evidence of the damage to the Hoelter car, the distance it traveled after it first appeared to go out of control, the plaintiff's estimate of the speed of his car, Ehrlinger's testimony about seeing the speedometer, and Albertini's testimony as to speed. It then told the jury: "[A]nd you have got the testimony that I have just referred to discussing circumstantial evi-

dence about the distance the car traveled, the marks that it laid on the road, the damage to the car and any other evidence that you might consider as relevant with regard to the problem of speed. You will determine what the speed was as a question of fact." In context, there was clearly no error in this portion of the court's charge.

The plaintiff also claims that the court committed error in its charge relevant to the speed of his car when it read to the jury the relevant portions of § 14-219 of the General Statutes concerning the evidence as to speed limit signs posted on the highway by the state traffic commission, including the provision that "[a]ny speed in excess of such limits shall be prima facie evidence that such speed is not reasonable." He complains that the court failed to define the term "prima facie evidence" and apply it to the evidence in the case. The plaintiff took no exception to the failure of the court to define the term "prima facie." The court did discuss at length the evidence as to speed and the variance between the plaintiff's claim of 55 miles per hour, Albertini's testimony that it was in excess of 70 miles per hour and Ehrlinger's evidence that it was 80 miles per hour, and there is nothing to indicate that the jury were in any way misled. Taken as a whole, the charge was correct in law, adapted to the issues and sufficient for the guidance of the jury. *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 570, 316 A.2d 394.

The remaining claim of the plaintiff is that he did not receive a fair trial "because of the court's verdict-urging instructions and because the court invaded the jury function." We find no merit whatsoever in this claim, and it does not require extended discussion.

The trial was a long one consuming twenty-four trial days. It involved multiple parties and several complicated issues as to which there was conflicting testimony. The jury began their deliberations on Thursday, May 23, and returned their verdicts on June 4. During their deliberations, the jury returned to ask the court a number of questions which required the reading of the testimony of a number of witnesses and further instructions on specific issues. On Friday, May 31, the jury reported that they could not "come to a unanimous decision as to a verdict in either of the cases before us." The court thereupon charged them along the lines of *State* v. *Smith,* 49 Conn. 376, 386, and informed them that "[i]f you are in fixed disagreement as to the facts or as to liability or as to damages, that is obviously one situation, but if I can help you reconcile your differences either by further reading of the testimony or by further explanation of the law, I will be glad to do so, but I can do it only by answering specific questions posed by you." Thereafter the jury did ask further questions and continued to deliberate. When they returned to report a second time that they could not reach a unanimous decision in "both cases" the court again offered to help them to reconcile their differences by further reading of testimony or further explanation of the law. One of their problems as indicated by their questions was with regard to the verdict forms and the effect of a verdict in one case as it might relate to the other. The court, on receiving their second report of inability to agree, told them that he was sending them back "one last time" for the purpose of considering whether they wished to ask any further question or questions in the matter. They did ask further questions and did reach the unanimous verdicts which were returned.

We have examined the transcript of the proceedings during the jury's deliberations and find no justification for a conclusion that the court invaded the province of the jury or that "the court's interplay with the jury, during the course of the jury deliberations, was tantamount to coercion." There is no merit to the claim of the plaintiff that he did not receive a fair trial. The court's actions were not only entirely proper but were exemplary. The court committed no error in refusing to set aside the verdict.

There is no error.

In this opinion LOISELLE, LONGO and BARBER, Js., concurred.

BOGDANSKI, J. (dissenting). Contributory negligence was a defense developed from and fashioned for negligence cases. The defense operated neatly. If a plaintiff had breached his duty of ordinary care, he would be barred from recovering from a defendant who had breached a similar duty.

The doctrine of strict liability in tort, however, as embodied in § 402A of the Restatement (Second) of Torts and as adopted by this court, is not grounded in concepts of negligence, and "is not affected by the presence or absence of negligence." *Prokolkin* v. *General Motors Corporation*, 170 Conn. 289, 301, 365 A.2d 1180. To establish a prima facie case under § 402A, a plaintiff must show that (1) a product was defective, (2) it was unreasonably dangerous to the consumer, (3) it thereby caused injury, (4) the seller of the product was engaged in the business of selling such a product, and (5) the product reached the user without substantial change in the condition in which it was sold.

"The crucial difference between strict liability and negligence is that the existence of due care, whether on the part of seller or consumer, is irrelevant. The seller is responsible for injury caused by his defective product even if he 'has exercised all possible care in the preparation and sale of his product.' Restatement (Second) of Torts, § 402A (2) (a)." *Berkebile* v. *Brantly Helicopter Corporation,* 462 Pa. 83, , 337 A.2d 893.

The doctrine of strict liability is a response to our society's concern with the protection of the consumer from the damage which the products of an industrialized society can cause. Implicitly, the doctrine recognizes that in an imperfect world defective products may result from complex manufacturing processes despite the absence of any conduct falling below that of a reasonable man. The doctrine represents a policy decision that the burden of injuries brought about by a defective product should not be placed upon the individual who uses the product but, rather, should be borne by the manufacturer or supplier, and thus eventually be spread among the consuming public. Restatement (Second), 2 Torts § 402A, comment c.

Logically, defenses in a strict products liability action should be related to that theory of recovery and the policy considerations which prompted its adoption, rather than the policy considerations inherent in a negligence case. In comment n to § 402A of the Restatement (Second) of Torts the position is taken that: "Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. Contributory negligence of the plaintiff is not a

defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."

A majority of the courts which have considered the issue have followed the Restatement position. They have recognized that contributory negligence of a plaintiff consisting merely of a failure to discover or guard against the possible existence of a defect does not bar recovery. Note, 46 A.L.R.3d 240 § 4 [a]; see, e.g., *Bachner* v. *Pearson,* 479 P.2d 319 (Alas.); *O. S. Stapley Co.* v. *Miller,* 103 Ariz. 556, 447 P.2d 248; *Barth* v. *B. F. Goodrich Tire Co.,* 265 Cal. App. 2d 228, 71 Cal. Rptr. 306; *Findlay* v. *Copeland Lumber Co.,* 265 Ore. 300, 509 P.2d 28; *Ellithorpe* v. *Ford Motor Co.,* 503 S.W.2d 516 (Tenn.); see also Noel, "Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk," 25 Vand. L. Rev. 93, 113. On the other hand, contributory negligence consisting of voluntarily and unreasonably encountering a known danger (assumption of risk) has been held to bar recovery in virtually all jurisdictions which recognize strict liability in tort. Note, 46 A.L.R.3d 240 § 5; see, e.g., *Bachner* v. *Pearson,* supra; *Luque* v. *McLean,* 8 Cal. 3d 136, 501 P.2d 1163; *Rindlisbaker* v. *Wilson,* 95 Idaho 752, 519 P.2d 421; *Devaney* v. *Sarno,* 125 N.J. Super. 414, 311 A.2d

208. But a majority of jurisdictions which have considered the issue have determined that the "reasonable man" standard in evaluating the plaintiff's conduct should be rejected in strict liability cases.

In *Bachner* v. *Pearson,* supra, 329, it was stated: "[T]he fact the plaintiff's negligent conduct may have concurred with the defect to cause his injury should have no bearing on the validity of the initial policies calling for the application of strict liability." In *Berkebile* v. *Brantly Helicopter Corporation,* supra, 900, the Supreme Court of Pennsylvania stated: "We hold today that the 'reasonable man' standard in any form has no place in a strict liability case. The salutary purpose of the 'unreasonably dangerous' qualification is to preclude the seller's liability where it cannot be said that the product is defective; this purpose can be met by requiring proof of a defect. To charge the jury or permit argument concerning the reasonableness of a consumer's or seller's actions and knowledge, even if merely to define 'defective condition' undermines the policy considerations that have led us to hold in [*Salvador* v. *Atlantic Steel Boiler Co.,* 457 Pa. 24, 319 A.2d 903] that the manufacturer is effectively the guarantor of his product's safety. The plaintiff must still prove that there was a defect in the product and that the defect caused his injury; but if he sustains this burden, he will have proved that as to him the product was unreasonably dangerous."

In *Williams* v. *Brown Mfg. Co.,* 45 Ill. 2d 418, 426, 261 N.E.2d 305, the Supreme Court of Illinois indicated: "We are persuaded that the policy considerations which led us to adopt strict tort liability in [*Suvada* v. *White Motor Co.,* 32 Ill. 2d 612, 210 N.E.2d 182] compel the elimination of

'contributory negligence' as a bar to recovery. We also note that all other jurisdictions which have adopted the theory of strict liability have reached substantially the same conclusion, for, even though some of the opinions speak in terms of 'contributory negligence' (see, *e.g.,* . . . [*Ettin* v. *Ava Truck Leasing, Inc.,* 53 N.J. 463, 251 A.2d 278; *Maiorino* v. *Weco Products Co.,* 45 N.J. 570, 214 A.2d 18]) the actual conduct there held to bar recovery would by us be classified as misuse or assumption of risk." The Supreme Court of Tennessee, in rejecting the applicability of the defense of contributory negligence in a strict liability case has expressed a similar opinion: "The reasons for this rule are two-fold: First, allowing ordinary negligence to bar strict liability would defeat the purposes for which the theory of strict liability was created. . . . Second, Tennessee courts have never allowed contributory negligence as a defense to conduct amounting to gross negligence, or to conduct which is culpable regardless of the care exercised by the defendant." *Ellithorpe* v. *Ford Motor Co.,* 503 S.W.2d 516, 521 (Tenn.). In *Findlay* v. *Copeland Lumber Co.,* supra, 305, it was held: "A user who neither mishandles the product nor voluntarily and unreasonably uses it after learning of its dangerous condition should not be deprived of this protection on account of incidental carelessness, even though it plays some part in the accident, if in fact a defect in the product is a proximate cause of his injuries." To a similar effect are: *O. S. Stapley Co.* v. *Miller,* supra; *McCarthy* v. *F. C. Kingston Co.,* 22 Ariz. App. 17, 522 P.2d 778; *Luque* v. *McLean,* supra; *Kirkland* v. *General Motors Corporation,* 521 P.2d 1353, 1365 (Okla.); *Pizza Inn, Inc.* v. *Tiffany,* 454 S.W.2d 420 (Tex. Civ. App.). See also *Jackson* v. *Coast Paint & Lacquer Co.,* 499 F.2d 809 (9th Cir.,

applying Montana law); *Downey* v. *Moore's Time-Saving Equipment, Inc.,* 432 F.2d 1088 (7th Cir., applying Illinois law); *Hastings* v. *Dis Tran Products, Inc.,* 389 F. Sup. 1352 (D. La.); *Parzini* v. *Center Chemical Co.,* 134 Ga. App. 414, 214 S.E.2d 700; *Gregory* v. *White Truck & Equipment Co., Inc.,*　Ind. App.　, 323 N.E.2d 280; *Keener* v. *Dayton Electric Mfg. Co.,* 445 S.W.2d 362 (Mo.).

In Connecticut, there are additional reasons why "contributory negligence" is an inappropriate defense to a strict product liability action. Prior to 1973, the contributory negligence doctrine was rejected: (1) where the defendant's negligence was willful or reckless; *Menzie* v. *Kalmonowitz,* 107 Conn. 197, 139 A. 698; (2) where the defendant was engaged in an ultrahazardous activity; *Starkel* v. *Edward Balf Co.,* 142 Conn. 336, 114 A.2d 199; (3) where the defendant created an absolute nuisance; *Carabetta* v. *Meriden,* 145 Conn. 338, 142 A.2d 727; and (4) by the application of the last clear chance doctrine; *Childs* v. *Blesso,* 158 Conn. 389, 260 A.2d 582; Saden, "Comparative Negligence Adopted in Connecticut," 47 Conn. B.J. 416, 420. In 1973, the legislature abolished contributory negligence as a complete bar to recovery in ordinary negligence actions where the plaintiff's negligence is not greater than the combined negligence of the persons against whom recovery is sought. General Statutes § 52-572h. The decision of the majority cannot be reconciled with the legislative rejection of the contributory negligence defense. From this day on, the term "strict liability" must be considered a misnomer in Connecticut. Tort liability which can be defeated by conduct which could not defeat simple negligence liability cannot be properly denominated "strict."

This is not to suggest, however, that strict liability is absolute liability. The same risk-spreading policy considerations which contributed to the adoption of the doctrine demand that limits be placed upon a seller's responsibility. Thus, "[i]n determining where the loss should fall as between the nonnegligent manufacturer, distributor or retailer and the less than careful plaintiff, it has generally been recognized that plaintiffs who 'misuse' a product—use it for a purpose neither intended nor 'foreseeable' . . . by the defendant—may be barred from recovery. (Restatement (Second) of Torts, § 402A, comment (h); Epstein, Products Liability: Defenses Based on Plaintiff's Conduct, 1968 Utah L. Rev. 267, 270; *Greeno* v. *Clark Equipment Co.* (N.D. Ind. 1965), 237 F. Supp. 427, 429; *O. S. Stapley Co.* v. *Miller* (1968), 103 Ariz. 556, 447 P.2d 248, 253; *Greenman* v. *Yuba Power Products, Inc.* (1962), 59 Cal. 2d 57, 27 Cal. Rptr. 697, 701, 377 P.2d 897, 901; *Preston* v. *Up-Right, Inc.* (1966), 243 Cal. App. 2d 636, 52 Cal. Rptr. 679, 683 & nn. 3 & 4; see also *Neusus* v. *Sponholtz* (7th Cir. 1966), 369 F.2d 259.)" *Williams* v. *Brown Mfg. Co., supra,* 425–26.

"Contributory negligence" focuses upon the reasonableness of the plaintiff's conduct as measured by a "reasonable man" standard. "Abnormal use" focuses upon whether the product was used in a manner which should have been foreseen by the defendant. By his requests to charge, the plaintiff advanced the view that only conduct which constituted an abnormal use or misuse would bar recovery, and equated normal use with the foreseeable, intended or anticipated use, to be measured

from the standpoint of the defendant.[1]  He argued that evidence of that standard was contained within the Pirelli pamphlet which described the tire in question as follows: "A remarkable snow tire. . . . Step on the accelerator, change gears, take a curve or hit the brakes—Pirelli Invernos grip . . . and hold. . . .  When using studded tires sustained speeds should not exceed 70 MPH . . . ."  It thus appears that the jury could have found that the foreseeable, intended and anticipated use of the tires was at sustained speeds of up to seventy miles per hour, and at intermittent speeds of over seventy miles per hour, rather than at the posted speed limit of 55 miles per hour.

---

[1] The plaintiff requested the court to charge as follows:

"(a.) Contributory negligence, in the ordinary sense, will not bar recovery from an injury resulting from a cause of action based on strict tort liability.

(b.) A plaintiff is barred from recovery in an action based on the strict tort liability of others only when the nature of the plaintiff's misconduct has reached the point at which he is guilty of an abnormal use of the product or has assumed the risk of its use.

(c.) In this case, . . . by their allegations of 'excessive' speed, the defendants have put in issue the question of whether the plaintiff made an abnormal use of the studded snow tires.  It is for you to determine, under all of the evidence presented, at what speed the plaintiff was proceeding and whether at that speed he was making an abnormal use of the product.

(d.) However, on the issue of abnormal use, you are to consider the anticipated and expected use of the studded tires on a 1964 MGB automobile.  If the plaintiff used the studded snow tires at a speed and in a manner which was foreseeable and which the defendants could have reasonably intended and anticipated, then the plaintiff would not be guilty of having abnormally used the studded snow tires.

(e.) I charge you that even if the speed of the motor vehicle in combination with and in conjunction with the condition of the studded snow tires were together the proximate cause of the 'fishtail,' then this would still not bar the plaintiff from recovery under the Second and Third Counts of his Complaint, relating to strict tort liability, unless you also find that plaintiff was making an abnormal use of the studded snow tires at the speed and in the manner in which he operated the motor vehicle just prior to the 'fishtail.' "

The court instructed the jury to compare the plaintiff's conduct with that of a reasonably prudent person.[2] Because the court rejected the requested charge, and adopted the "reasonable man" standard, the defendant manufacturer may have been able to escape liability for the sale of a defective product where the conduct of the user, although perhaps negligent, may have been the very use which was intended for the product by the manufacturer. If such a user is barred as against a manufacturer, we are left with a rule which permits the negligent user

---

[2] The court charged as follows: "Now, turning to the counts dealing with strict liability against ɔach defendant, it is the law . . . that contributory negligence is a defense in strict liability when the conduct of the person claimed to have been injured by the alleged defective product has to do with use of that particular product. . . . Now, Mr. Hoelter had the duty not to misuse the studded tires or to use them in an abnormal way. . . . [I]f you find that he was using the tires by driving at a speed greater than the reasonably prudent person would operate the car, then, you would find him negligent in that regard. . . . Now, as far as the control of the car is concerned, . . . by determining under what control a reasonably prudent person would have operated the car and under what control Mr. Hoelter, in fact, operated the car, you can find whether or not Mr. Hoelter was negligent in regard to control."

The plaintiff excepted as follows: "I . . . take exception to your charge on contributory negligence. . . . I think you are saying it's a breach of duty under strict tort liability to put out a defective product, but then you are applying a test of negligence, of a reasonably prudent person in the use of that very defective product. . . . You are introducing a question of negligence of reasonably prudent behavior into a strict liability situation, . . . and contributory negligence is not a defense to that. . . . I think we were entitled to some reference to . . . the concept of a reasonably foreseeable intended use. Your Honor gave the jury no instruction on that whatsoever."

During their deliberation, the jury requested the court to explain "strict liability, contributory negligence and causation as they apply" to the Hoelter case. The court reaffirmed its earlier charge and reiterated that "the claims of contributory negligence . . . had to be considered . . . under the test of a reasonably prudent person . . . ." The plaintiff again excepted and stated that: "You must explain to them what the foreseeable and intended use of the product was . . . and it seems to me that the Pirelli specifications in and of themselves spell out the intended and foreseeable use of this product."

to recover in warranty or negligence, but not in strict tort liability, despite the fact that all elements of that tort are present. Clearly, such a result could not have been intended by this court when in *Rossignol* v. *Danbury School of Aeronautics, Inc.*, 154 Conn. 549, 560, 227 A.2d 418, we expressed our approval of the principles enunciated in § 402A of the Restatement (Second) of Torts. The trial court should have adopted the written requests submitted by the plaintiff.

I would, therefore, find error, set aside the judgment and order a new trial.