[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
REPORT OF ATTORNEY TRIAL REFEREE
INTRODUCTION
This action is a subrogation claim brought by the plaintiff CT Page 1354 Commercial Union Insurance Companies against the defendant Jack Burlon, dba, a roofing contractor. In a two count complaint, the first sounding in negligence and the second in contract, the plaintiff alleges that the defendant caused property damage by water to occur to the plaintiff's insured, the Waterford Tile and Carpet Company, through the faulty installation of a roof on the insured's building. The plaintiff alleges that it paid a certain amount to its insured following the receipt of a casualty loss claim from its insured. The plaintiff now seeks, pursuant to its claimed right of subrogation, to recover against the defendant the sums it paid its insured.
Finding of Fact
The undersigned makes the following findings of facts:
1. At all times herein relevant the plaintiff, the Commercial Union Insurance Companies (Commercial) was and is an insurance company licensed to transact business in the State of insurance company licensed to transact business in the State of Connecticut.
2. At all times herein relevant the defendant Jack Burlon (Burlon) was doing business as Jack Burlon Roofing, with a principal place of business in Groton, Connecticut and was engaged in the roofing business.
3. At all times herein relevant Rocco Del Priore (Del Priore) was and is the president of Waterford Tile and Carpet a Connecticut corporation with a principal place of business at 38 Boston Post Road, Waterford, Connecticut.
4. At all times herein relevant the plaintiff Commercial insured the building and its contents of Waterford Tile and Carpet.
5. On or about October 9, 1989, the defendant Burlon and Del Priore entered into an agreement whereby Burlon agreed to perform certain labor and to provide materials relating to the roofs of the Waterford Tile building for the total consideration of $7990. (cf Plaintiff's Exhibit 2)
6. The Waterford Tile building had two flat roofs abutting one another, one lower than the other by about two and one half feet with the lower roof located over the front part of the building facing Boston Post Road and the higher roof covering the rear portion of the building. (Plaintiff's Exhibit 6)
7. The roof of the building was approximately 38 years old. CT Page 1355
8. On or before October 17, 1989, the defendant commenced work on the lower roof.
9. During the first day of work Burlon and his crew removed the lower roof to its metal deck, laid insulation on the deck and covered it with thirty two pound-weight base felt which was rolled on and bedded in hot tar. Upon uncovering this roof, Burlon discovered that the insulation beneath it was soaking wet.
10. Additionally during this first day Burlon placed temporary flashing between the upper and the lower roofs and finishing cement around the perimeter of the lower roof.
11. While this was intended to be a four ply job, with more felt and tar to be applied, Burlon believes that the applications to the lower roof in the first day provided a temporary seal to the lower roof.
12. During this first day the defendant did not uncover any of the rear roof but did place some of his materials and equipment on this roof and covered them with a tarp.
13. After Burlon worked for approximately one day he was not able to resume the roofing job for approximately three days because the weather was inclement with rain and high winds.
14. After the first day, and during the second day Mr. Burlon returned to the job site and saw that a gutter and drain I pipe had become separated from the building during the storm. This gutter was located in a section of the building's exterior between the upper and lower roofs.
15. At this time Burlon noticed that there was a leak in one corner of the lower roof where the gutter had been blown off.
16. Mr. Burlon believes that some water may have gotten into the building in the area where the gutter had become detached from the roof.
17. It was not part of Burlon's contract to replace the buildings gutters.
18. During the rainstorm Burlon employed helpers who attempted to cover the roof with tarps.
19. After a wait of three or four days caused by the rain storm, Mr. Burlon finished the roofing job. When he removed the upper roof he discovered that it had no insulation beneath it.
20. During the rainstorm Mr. Del Priore took a number of CT Page 1356 photographs which depict water damage to the interior of the building as well as to its contents. A number of these photographs show the presence of water at the time the photos were taken. (cf Plaintiff's Exhibit 5) These photographs depict water stains to both the ceiling tiles as wells as the sheet rock portions of the ceiling.
21. At all times herein relevant Richard Simmons of Northford, Connecticut has been employed as a senior property adjuster for the plaintiff Commercial Union.
22. On or about October 30, 1989 Simmons was notified of a property loss claim made by the Waterford Tile and Carpet Company for water damage to its premises and personal property located herein.
23. On approximately the same date Simmons visited the premises and made a visual inspection of the inside of the building as well as its contents.
24. At no time during his inspection did Simmons climb to the roof to make a physical inspection of it.
25. On his physical inspection Simmons observed substantial water damage including damage to the carpeting, sheet rock and tile ceilings, a pegboard on an interior wall as well as to several articles of merchandise, equipment and supplies located inside the building.
26. During his inspection Simmons was shown a series of photographs by Del Priore which Del Priore told him had been taken during the rainstorm. These photographs appeared to Simmons to depict recent water damage. (cf Plaintiff's Exhibit 5)
27. Simmons has been employed by the Commercial Union for twenty years and has investigated hundreds of claims.
28. From his inspection and after discussions with Del Priore, Simmons determined that the total loss of Waterford Tile and Carpet Company was $12,374.45.
29. Based on his physical inspection, the information given to him by Del Priore, his review of the photographs and his experience as an adjuster, Simmons formed the opinion that the damage he observed was caused by water entering the building due to the defendant's failure to cover the roof after he had removed it and before the onset of the rainstorm.
30. The plaintiff Commercial Union paid Waterford Tile the sum of $12,274.45 for its property damage claim representing the CT Page 1357 total loss less the insured's deductible.
31. While Del Priore testified on cross examination that prior to the October storm the building had never sustained any water damage, that there had been no water stains and that he had never before placed buckets inside the building to collect water dripping from the ceiling, Peter Casio of New London, while present in the store on or about September 5, 1989, noted the presence of buckets on the floor collecting dripping water, yellowish stains on the ceiling with some pieces of ceiling tile missing.
32. During this September 5th visit Del Priore told Cassio that he needed a new roof and Casio recommended that Del Priore hire Burlon to do the job.
33. Prior to signing the contract with one another Del Priore and Burlon met at the store at which time Del Priore told Burlon that the store had a number of leaks.
34. During this visit Burlon observed several areas inside the store which he thought showed evidence of water leaks and he noticed, on inspecting the roof, that it had been patched in a number of places.
35. Casio, on viewing the photographs taken by Del Priore, believed that some of the damage depicted was similar to the damage he noticed during his September visit to the building.
Discussion
In order to prevail in its claim the plaintiff must prove, by a fair preponderance of the evidence, that the defendant was negligent, that his negligence was the proximate cause of damages to Waterford Tile and that the plaintiff is entitled to recover based on its payment to Waterford Tile and pursuant to its rights of subrogation. If the plaintiff is unable to prove each of these elements then judgment must enter for the defendant.
Negligence is the omission to do something which a reasonable person guided by those considerations which ordinarily regulate the conduct of human affairs would do, or the doing of something which a prudent and reasonable person would not do. Dokus v. Palmer 130 Conn. 247, 251. It is not usually sufficient for a plaintiff merely to prove that a defendant took a certain course or action, or failed to do so and, as a consequence, the plaintiff suffered harm. The plaintiff must prove that the conduct or omission was unreasonable under the circumstances.
In this case there was testimony that the defendant removed CT Page 1358 the lower roof to the metal deck, covered it with insulation, and covered that with a felt base applied to the roof with hot tar to seal the roof. There was no evidence that the defendant's procedure was inappropriate. While the plaintiff is not required to produce expert testimony in order to prove a violation of a standard of care, the record is not supported by any credible evidence that the defendant either did that which he should not have done or didn't do that which he should have.
It appears to be the position of the plaintiff that the doctrine of Res Ipsa Loquitur should apply to the instant situation. Where this doctrine does arise then the plaintiff can make out a prima facie case merely by showing the pertinent facts resulting in its injury without actually proving negligence. It is a doctrine which permits the drawing of an inference of negligence under certain circumstances. In order for this doctrine to apply three conditions must pertain:
1. The situation, condition or apparatus is such that in the ordinary instance no injury would result unless from a careless construction, inspection or user.
2. Both inspection and user must have been at the time of the injury in the control of the party charged with the neglect.
3. The injurious occurrence or condition must have happened irrespective of any voluntary action at the, time by the party injured. cf. Wright, Connecticut Law of Torts, 41, 3rd Ed (1991)
In the instant case, in order to apply, the doctrine one must be able to conclude that the water damage was caused by the defendant's activities with respect to the lower roof. If that were proven and if it were also proven that the defendant was solely in control of the instrumentality of harm, then perhaps negligence could be inferred. In this case however, the plaintiff has not proven that the defendant's activities caused the damage. There was a credible evidence that the building's roof had leaked in the past well before the defendant's involvement. There was a credible evidence that Burlon did not invade the rear or higher roof. Casio testified that some of the water staining which showed on some of the photographs taken by the defendant appeared to be similar to the stains he observed in September, prior to the alleged occurrence. Burlon testified that Del Priore told him before the alleged occurrence that the building had a history of leaking. Since Burlon had not invaded the rear or higher roof and there is no evidence of the specific cause of the leakage it is impossible to conclude that the damage was related to the activities of Burlon. In short, the plaintiff has failed not only to demonstrate negligence of the part of the CT Page 1359 defendant; it has not proven the operative facts of the injury. From the evidence adduced at this hearing it would be just as reasonable to conclude that water damage occurred as a result of leaks in the rear roof as it would be to conclude that the I partially completed new roof leaked.
In his brief the defendant claims that the plaintiff has not proven its right to subrogation and therefore could not prevail even if it had satisfied its burden relating to negligence and, causation. While the undersigned does not believe that this issue must be reached, it should be noted that the contract of insurance (which presumably would have set forth the plaintiff's rights of subrogation) was not produced at trial. In its brief the plaintiff argues that the contract was produced in discovery and is therefore part of the pleadings. Such is not the case. The contract, having not been submitted as evidence, is not before the court.
Conclusion and Recommendation
Based on the foregoing the undersigned recommends to the court that it enter judgment in favor of the defendant.
RESPECTFULLY SUBMITTED Thomas A. Bishop Attorney Trial Referee